FILED

2016 Oct-25  PM 01:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| COOSA RIVERKEEPER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO.: _____ |
| OXFORD WATERWORKS AND SEWER | ) |
| BOARD, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Coosa Riverkeeper, Inc. ("Riverkeeper"), hereby files this Complaint and alleges as follows:

### Nature of the Case

1.     This lawsuit relates to grievous and pervasive water pollution caused by illegal discharges from the Oxford Tull C. Allen Wastewater Treatment Plant ("Oxford Plant") into Choccolocco Creek in violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1376. The violations raised in this Complaint are the latest in a continuous pattern of violations that have occurred since 1992.  The Oxford Plant has been the subject of numerous notices of violation, enforcement actions, and administrative orders, but the violations continue.

2.     The Oxford Plant continues to violate its National Permit Discharge Elimination System ("NPDES") permit. At times, it has discharged pollutants, such as *E.coli*, in excess of 246 times what its permit allows.

3.      Through counsel, Coosa Riverkeeper, Inc. ("Riverkeeper") issued a 60-day notice to the Oxford Plant on August 3, 2016, stating its intention to file a citizen's suit to address numerous violations, pursuant to the CWA, 33 U.S.C. §1365. The notice stated that Riverkeeper intended to file a complaint in federal court against the Oxford Plant to enforce the requirements of the permit. A copy of the notice letter is attached as Exhibit 1.

4.      More than sixty days have passed since Riverkeeper provided its notice of intent to sue, and the violations identified in the notice letter have not been addressed and will continue in the future absent a court order for corrective action.

5.      Prompted by Riverkeeper's notice letter, the State of Alabama ex rel., Luther Strange, Attorney General, and the Alabama Department of Environmental Management ("ADEM"), (collectively, the "State") filed an enforcement suit on September 30, 2016, under the Alabama Water Pollution Control Act, that usurped Riverkeeper's ability to bring most of its claims to court. (Attached as Exhibit 2).

6.      When the State commences "a civil or criminal action in a court of…a State to require compliance with the standard, limitation, or order" a citizen cannot bring those particular claims. 33 U.S.C.A. § 1365 (b)(1)(B).

7.      When the operators of wastewater treatment plants ("WWTPs"), municipalities, and the state have been asked why the state files suits against WWTPs after citizens file notices of intent to sue, they have responded that the state filing "keeps (ADEM) in control on the amount of litigation, and they can control the amount of fines," the Superintendent of Ardmore Waterworks and Sewer Board said.[1]

---

[1] Jonathan Deal, *State Files Suit against Ardmore Water and Sewer*, Athens News Courier, April, 26, 2012, available at http://www.enewscourier.com/news/local_news/state-files-suit-against-ardmore-water-and-sewer/article_c6024961-8098-53d0-9a9f-90d4b3722b7f.html (last visited Oct. 10, 2016).

8.      Chris Bence, a past chief of staff for the Alabama Attorney General stated, "(T)he suit against the city was not a punitive measure but a preemptive measure to *protect* the city from future civil lawsuits" (emphasis added).[2]

9.      In a letter to ADEM, past Cordova Mayor Jack Scott stated "ADEM filed a lawsuit to help protect us by keeping the River Keepers (sic) from filing against us and going to Federal Court."[3]

10.     This particular state complaint against Oxford did not include multiple ongoing violations of the CWA , including: (1) multiple ongoing permit violations documented by the Riverkeeper in the 60-day notice, and (2) the Oxford Plant's unlawful discharge of formaldehyde into Choccolocco Creek without a permit.

11.     Riverkeeper now seeks declaratory and injunctive relief, the assessment of penalties, and an award of litigation costs and fees to address the Oxford Plant's violations of its NPDES permit and unauthorized discharges which are not included in the State's action against the Oxford Plant.

12.     The Oxford Plant has repetitively violated the terms of its NPDES permit over the course of 25 years, yet ADEM has only issued one fine to Oxford of $20,450, which is insignificant when one considers it is less than the amount Oxford receives in annual fees from one of its 12 industrial dischargers, and is less than the statutory penalty under the CWA for a single violation.

13.     This Complaint seeks enforcement of approximately 46 new violations.

---

[2] *City Approves $130,500 Settlement with ADEM Over Violations*, The Daily Home,  October 25, 2010, available at http://www.annistonstar.com/the_daily_home/dh_news/city-approves-settlement-with-adem-over-violations/article_c7f90213-5536-52a1-837a-7ec96cd74ec3.html (last visited Oct. 10, 2016).
[3] Letter from Jack Scott, Cordova Mayer, to Glenda Dean, ADEM, July 12, 2007.

**Jurisdiction and Venue**

14.     This action arises under the Clean Water Act (CWA) § 505(a), 33 U.S.C. § 1365(a), and this Court has subject matter jurisdiction over the claims set forth in this Complaint under those provisions and under 28 U.S.C. §1331 (federal question).

15.     Riverkeeper gave notice of the violations alleged in this Complaint on August 3, 2016. Copies of such notice were also served on the Administrator of the U.S. Environmental Protection Agency (EPA), the Regional Administrator of EPA - Region 4, and the Director of ADEM. (Exhibit 1).

16.     Pursuant to the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiffs gave more than sixty days' notice of their CWA claims to all required parties prior to the commencement of this lawsuit.

17.     At least sixty days have passed since service and receipt of Plaintiff's August 3, 2016, notice letter and neither EPA nor the State of Alabama has commenced or is diligently prosecuting a civil or criminal action against the Oxford Waterworks and Sewer Board in a court of the United States, or a state court, to address the specific violations of the laws, rules, regulations, permits, standards, limitations, and orders at issue in this Complaint prior to the commencement of this action. Moreover, neither the United States nor the State of Alabama has commenced an administrative action, or any other action, against Oxford Waterworks and Sewer Board or the City of Oxford for the violations alleged herein prior to the date of Plaintiff's notice letter.  Plaintiff is commencing this action within 82 days of the date of service of its notice letter and within 24 days of the State's enforcement action.

18.     Venue is proper in the Northern District of Alabama because the source of the violations alleged herein is located within the Northern District of Alabama.  33 U.S.C. §1365(c)(1); 42 U.S.C. § 6972(a); and 28 U.S.C. §1391(b) and (c).

4

## Parties

19.     Plaintiff Riverkeeper is an Alabama nonprofit membership corporation with over 400 members that is dedicated to the protection and restoration of the Coosa River and its tributaries. Riverkeeper actively supports effective implementation and enforcement of environmental laws, including the CWA, on behalf and for the benefit of its members. Riverkeeper is a "citizen" within the meaning of section 505(g) of the CWA, 33 U.S.C. §1365(g).

20.     Members of  Riverkeeper use and value Choccolocco Creek, a tributary of the Coosa River, for recreation, including but not limited to paddling, boating, tubing, fishing, swimming, wildlife observation, nature and landscape observation and photography, and for aesthetic enjoyment. Members also own businesses on Choccolocco Creek. These members believe these waters have been polluted and degraded by the Oxford Plant's actions and that local wildlife and aquatic life has been harmed by the pollution described herein. Moreover, they are concerned about the significant concentrations of pollutants that the Oxford Plant is putting into Choccolocco Creek, and whether those pollutants make it unsafe to recreate near the Plant.

21.     For example, Riverkeeper Member James O' Rear owns and operates a tubing business which is approximately one mile downstream of the Oxford Plant, and his business has been negatively impacted by illegal discharges from the Oxford Plant.

22.     Riverkeeper Member Michael Kiser uses the Creek recreationally and teaches his four sons to fish on Choccolocco Creek.

23.     The violations alleged herein have lessened members' recreational and aesthetic enjoyment of Choccolocco Creek. They would use and enjoy these waters more if the violations alleged herein were abated. Enforcement by this Court of the CWA as to Plaintiff's claims, including injunctive relief and the imposition of fines, would remedy the recreational and

aesthetic injuries suffered by Riverkeeper's members.  The interests Plaintiff seeks to protect are germane to its purposes and objectives, but neither the claims asserted herein, nor any of the relief requested, require the participation of individual members in this lawsuit. Accordingly, Riverkeeper has standing to prosecute this action.

24.     The City of Oxford vested the Oxford Waterworks and Sewer Board to operate and manage the City's water.[4] Defendant Oxford Waterworks and Sewer Board operates the Oxford Plant which discharges pollutants from the facility located on 2975 Silver Run Road, Oxford, AL, to Choccolocco Creek, a water of the State.

## Legal Background

25.     The goal of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

26.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless in compliance with various enumerated sections of the law. Among other things, Section 301(a) prohibits such discharges not authorized by the terms of a NPDES permit issued pursuant to Section 402, 33 U.S.C. § 1342, of the statute.

27.     An NPDES permit authorizes the discharge of only those pollutants contained in a wastestream disclosed in a permit application or specific pollutants disclosed in a permit application, and where the permitting agency has not expressly prohibited the wastestreams or pollutants. 33 U.S.C. § 1342(k).

28.     Section 505(a) of the CWA, authorizes any "citizen" to "commence a civil action on his own behalf…against any person...who is alleged to be in violation of .... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a). An "effluent standard or limitation" is

---

[4] City of Oxford Ordinance, Chap. 44. Article 1, Section 44-1.

defined to include unlawful acts under Section 301(a) of the CWA; an effluent limitation under Section 301 or 302 of the CWA; the terms and conditions of a NPDES permit issued pursuant to Section 402 of the CWA; and prohibition, effluent standards, or pretreatment standards under Section 307 of the CWA. 33 U.S.C. §§ 1365(f)(1),(2),(4), and (6).

29.     The citizen must in good faith believe that violations will continue, either intermittently or continuously, and must allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 49 (1987). Citizen suits are permitted when there is a pattern of intermittent violations, even if there is no violation at the moment suit is filed. "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real likelihood of repetition." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.,* 844 F.2d 170, 172 (4th Cir. 1988). Riverkeeper believes and alleges that the violations cited in this complaint are both continuous and intermittent.

30.     Under Section 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

31.     The CWA allows a civil penalty of $37,500.00 for each and every actionable violation of the Act alleged herein, in accordance with CWA § 505(a), 33 U.S.C. § 1365(a). S*ee,* 40 C.F.R. Part 19.

## Factual Background

**The Oxford Plant**

32.     The Oxford Plant releases wastewater from Outfall 0011, a discharge pipe permitted under NPDES Permit No. AL0058408, into Choccolocco Creek. This is where a majority of the violations identified have occurred.

33.     The Oxford Plant serves approximately 28,700 people and has a design flow of 4.5 million gallons per day.  It also serves approximately 12 industries that have significant industrial discharge permits.

34.     Pursuant to the National Pollutant Discharge Elimination System ("NPDES") program administered by ADEM, the Department issued NPDES Permit No. AL0058408 to the Oxford Waterworks and Sewer Board in 1989. It was last reissued its permit in August 28, 2013, which expires on August 31, 2018.

35.     The Oxford Plant has had a 25-year history of violations, and the Plant continues to violate its permit to this day.

36.     The Oxford Plant applied for its first permit in 1989, and it began violating its permit three years later, in 1992.

37.     ADEM has issued at least fifteen prior Notices of Violations to the Oxford Plant.

38.     The Oxford Plant failed or has been cited for deficiencies in a large portion of its inspections and tests.  Besides problems with the operation of the Plant, most of these inspections and tests noted problems with the method of Oxford's sampling.

39.     Additionally, ADEM has issued four administrative orders against the Plant (in 1994, 1995, 2012, and 2013). In the last two administrative orders alone, the Oxford Plant violated its permit over 1400 times.

40.     Despite a twenty-five year record of serious violations, the Oxford Plant has only received one $20,450 fine in its history.  This amount is less than the $37,500 statutory penalty under the CWA for a single violation, and only about 0.05% of the City's recent budget. (In September of 2016, the Oxford City Council approved a $43,000,000 budget with a $300,000 surplus.)[5]

**The Riverkeeper**

41.     Riverkeeper first became aware of the Oxford Plant's chronic problems by researching ADEM's electronic documents on its Efile site in January of 2011. Riverkeeper researched the Plant's discharge monitoring reports and found that among other things, the Plant had been violating its ammonia permit limitations for the last three years. Riverkeeper then spoke with the plant manager, Wayne Livingston. After a failed attempt to resolve the issues amicably, the Riverkeeper reported his findings to *The Anniston Star*.[6]

42.     In July of 2011, ADEM issued a draft Consent Order based on Riverkeeper's findings. Riverkeeper wrote comments on the draft Order pointing out that the Order did not address the alleged source of the problem, Kronospan, a fiberboard manufacturer in the area that discharges to the Oxford Plant. Additionally, Riverkeeper explained that the Order did not account for the economic benefit received from delayed compliance and that the number of violations were not correctly tallied.

43.     ADEM issued its final Order on March 21, 2012, disregarding all of Riverkeeper's comments.

---

[5] Zach Tyler, *Oxford City Council Approves a $43 Million Budget, with a $300,000 Surplus*, The Anniston Star, Sept. 27, 2016, available at http://www.annistonstar.com/news/oxford/oxford-city-council-approves-budget-with-k-surplus/article_80aff342-8527-11e6-996a-575dd20c3aeb.html (last visited Oct. 20, 2016).
[6] Laura Johnson, *Oxford Wastewater Treatment Plant Struggles With Regulations*, The Anniston Star, Feb. 19, 2011, http://www.annistonstar.com/news/oxford/oxford-waste-water-treatment-plant-struggles-to-comply-with-regulations/article_e73545d2-1374-50f2-b3e3-d0bb1ab44c3e.html (last visited Oct. 20, 2016).

44.     In 2012, the Plant's draft NPDES permit was noticed to the public and Riverkeeper wrote comments on the draft permit on November 6, 2012 again pointing out compliance deficiencies and the problems with Kronospan. The 2012 draft NPDES permit was never finalized and ADEM did not respond to the Riverkeeper's comments.

45.     In 2013, ADEM noticed a revised draft NPDES permit to the public and Riverkeeper submitted comments on August 9, 2013 pointing out compliance deficiencies and the problems with Kronospan.

46.     During the summers of 2015 and 2016, Riverkeeper conducted sampling throughout the Coosa River Basin to ensure the safety of swimmers in the area. The Riverkeeper publishes this "Swim Guide" data on its website and distributes the sampling results via email and text message. Riverkeeper monitored Choccolocco Creek every Thursday in the summers of 2015 and 2016 for the "Swim Guide" program approximately two miles downstream of the Oxford Plant where customers from Floating Fun, LLC tube and kayak on the Creek.

47.     On May 22, 2015, Riverkeeper filed an official complaint with ADEM after Riverkeeper found dangerously high *E. coli* results approximately one mile downstream of the Oxford Plant. [7] ADEM closed the complaint without an investigation. [8] In subsequent email communication between Riverkeeper and ADEM environmental scientists, Riverkeeper pleaded with ADEM to look at the Oxford Plant as a potential source of the *E. coli* contamination. ADEM did not initiate an investigation.

---

[7] ADEM Complaint # 7S-004QH4U31, May 22, 2015, available at  http://app.adem.alabama.gov/complaints/7S-004QH4U31, (last visited Oct. 20, 2016).
[8] ADEM Complaint # 7S-004QH4U31, May 22, 2015, available at  http://app.adem.alabama.gov/complaints/7S-004QH4U31, (last visited Oct. 20, 2016).

48.     In July 24, 2015, Riverkeeper filed another official complaint with ADEM after it found another round of high *E. coli* results approximately two miles below the Plant. ADEM closed the complaint without an investigation.[9]

49.     Because of the high levels of *E. coli* that Riverkeeper found in May of 2015 downstream from Oxford Plant's discharge pipe, Riverkeeper began to test the discharge from the Plant's pipe. In addition, Riverkeeper tested upstream of the discharge pipe and compared the results upstream with the results from the pipe.

50.     Riverkeeper consistently found that the effluent from the Oxford Plant's discharge pipe substantially exceeded its permit limitation for *E. coli* and/or chlorine for most of the last eight months beginning in February 2016 when Riverkeeper began routinely monitoring. In addition, the effluent from the pipe typically substantially exceeded the *E.coli* from the upstream sample.

**The Current Violations**

51.     The current violations relate to the Oxford Plant's illegal discharge of formaldehyde, *E. coli*, and chlorine, and the Plant's failure to report these and other illegal discharges.

*E. coli*

52.     *E. coli* are bacteria found in the intestines of people and warm-blooded animals. Some strains of *E. coli* can cause diarrhea, while others can cause urinary tract infections, respiratory illness and pneumonia, and other illnesses.  *E. coli* is used an indicator for fecal contamination in fresh water. Fecal contamination is harmful because pathogens (bacterium, virus, or other microorganisms that can cause disease) often co-occur with indicators of fecal contamination. When exposed to *E. coli* in fresh waterbodies, such as Choccolocco Creek, children showed a higher rate of illnesses than adults.

---

[9] ADEM Complaint # 0T-001EE0M63, July 24, 2015, http://app.adem.alabama.gov/complaints/0T-001EE0M63 (last visited October 20, 2016).

53.     Choccolocco Creek is a popular area for recreational activities such as swimming, fishing, and tubing.  The Creek is the base for a tubing business, Floating Fun, LLC, where customers can float the creek in a tube. The main access point for Floating Fun, LLC is located approximately one mile downstream of the Oxford Plant Outfall 0011.

54.     Less than 25 miles downstream from the Oxford Plant, Choccolocco Creek empties into Logan Martin Lake on the Coosa River, where boaters fish and swim on a daily basis.

55.     In the previous 2007 NPDES permit, the Oxford Plant was required to measure fecal coliform instead of *E. coli* as the indicator organism for pathogenic bacteria. *E. coli* is a type of fecal coliform bacteria.

56.     The Oxford Plant has a long history of testing irregularities relating to *E. coli* and fecal coliform. On May 9, 1994, a testing comparison between Oxford's lab data and a private engineering firm's data of the Oxford Plant's effluent found that Oxford's lab data on fecal coliform was consistently lower than the engineer's data.

57.     On March 1, 1995, ADEM issued an Administrative Order to the Oxford Plant requiring it to upgrade its Plant in order to comply with the fecal coliform permit limitations.

58.     On August 7, 2008, ADEM issued a Notice of Violation to the Oxford Plant stating that the geometric mean that the Plant reported for fecal coliform was incorrect for September 2007, October 2007, December 2007, and January 2008.

59.     On September 1, 2010 and July 12, 2011, ADEM inspected the Plant and found that the facility surpassed the limits for fecal coliform. The Oxford Plant did not report these violations in its Discharge Monitoring Reports.

60.     On September 28, 2011, an independent lab, TTL, found the fecal coliform to be greater than 60,000 cfu/100 mL.

61.     On December 31, 2011, the Plant filed a Noncompliance Notification indicating an excess of fecal coliform.

62.     In the March 21, 2012 Consent Order, ADEM claimed that the Oxford Plant exceeded its fecal coliform permit limitation.

63.     In the July 29, 2013 Unilateral Consent Order issued to the Plant, ADEM found that the Plant was not compliant with its permit limits for fecal coliform.

64.     On December 16, 2014, ADEM inspected and found that Oxford's sampling of *E. coli* was being done improperly.

*Chlorine*

65.     Chlorine harms the vast biodiversity found in the Creek.

66.     In 1997, the U.S. Fish and Wildlife ("FWS") warned ADEM that the endangered Coosa Moccasinshell mussel and the tulotoma snail are in the vicinity of the Oxford Plant and that certain levels of chlorine could be toxic to these species. FWS asked ADEM to notify them if the chlorine rose above 0.01 mg/1.

67.     According to the Water Resources Center at Auburn University, Choccolocco Creek "may support the largest number of endangered and threatened species found in any Alabama waterway of comparable size".

68.     Because of this, the Geological Survey of Alabama, FWS, and the Alabama Department of Conservation and Natural Resources have designated the length of Choccolocco Creek from the treatment plant to the Coosa River as a "priority area for conservation action."

69.     On March 21, 1995, April 10, 1995, May 17, 1995, July 20, 1995, and August 23, 1995, ADEM issued five Notices of Violations because the Plant exceeded its chlorine limitations.

70.     On September 1, 2010, ADEM inspected the Plant and found that the facility surpassed the limits for chlorine. The Plant did not report this violation in its Discharge Monitoring Report.

*Formaldehyde*

71.     Formaldehyde is a hazardous substance per 40 C.F.R. 116.4 ; it is dangerous for humans to swim in or drink formaldehyde.

72.     A hazardous substance is a compound "when discharged in any quantity" into waters, "present an imminent and substantial danger to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, shorelines, and beaches." 33 U.S.C.A. § 1321(b)(2)(A).

73.     In April 2008, the Oxford Plant recognized it had "high" levels of formaldehyde coming from Kronospan that caused "interference" or malfunction of the Plant causing the Plant to violate its permit. *See* EPA Administrative Order No. CWA 04-2013-4756, April 25, 2013; 40 CFR Part 403.3.

74.     On July 12, 2011, ADEM completed an inspection report and facility personnel explained that Kronospan was discharging a large amount of formaldehyde into the Oxford Plant which "was affecting water treatment."

75.     In response to Riverkeeper's August 3, 2011 comments on the Proposed Consent Decree, ADEM wrote, "Oxford has previously indicated that formaldehyde from Kronospan was interfering with the WWTP.  As indicated in the proposed Order, the Department has requested Oxford to provide acceptable pollutant levels which would be protective of the WWTP."[10] The Plant still does not restrict the amount of formaldehyde coming into the Plant.

---

[10] Letter from Daphne Smart, ADEM, to Frank Chitwood, Riverkeeper, Inc, Re: Response to Comments on Proposed Consent Order, NPDES Permit No. AL0058408.

## Count I
### The Oxford Plant Has Violated and Will Continue to Violate Its NPDES
### *E.coli* and Chlorine Permit Discharge Limitations.

76.     Riverkeeper incorporates paragraphs 1 through 75 by reference.

77.     ADEM reissued NPDES Permit No.  AL0058408 in 2013 to Oxford Waterworks and Sewer Board authorizing the discharge of pollutants from the Oxford Plant to waters of the State, subject to certain conditions.

78.     During all relevant times herein, NPDES Permit No. AL0058408 included the following discharge limitations applicable at Outfall 0011.

        (a) For Chlorine, Total Residual, the permit specifies a Monthly Average of 0.08 mg/L and a Daily Maximum of 0.14 mg/L.

        (b) For *E. Coli*, the permit specifies a Monthly Average of 126 col/100ml and a Daily Maximum of 487 col/100ml during the summer months from June through September.

        (c) For *E. Coli*, the permit specifies a Monthly Average of 548 col/100ml and a Daily Maximum of 2507 col/100ml during the winter months from October through May.

79.     For the last eight months, Riverkeeper has been taking samples at the Oxford Plant's Outfall 0011 to ensure the safety of swimmers, tubers, and boaters in the area and to monitor the Plant's compliance with NPDES permit No. AL0058408.

80.     Riverkeeper delivered samples to an EPA-approved independent lab to analyze. At times, the Oxford Plant discharged *E. coli* as high as 246 times what its permit allows, and the chlorine sample was often well-above what the permit allows, as shown in Table 1 below.

| Table 1: Daily Maximum Effluent Violations as Found by Riverkeeper | | | |
|---|---|---|---|
| Date | Parameter | Effluent Permit Limitation | Sample |
| February 23, 2016 | *E. coli* | 2,507 col/100mL | 308,000 col/100mL |
| February 23, 2016 | Total Residue Chlorine | 0.14 mg/L | 0.27 mg/L |
| March 22, 2016 | Total Residue Chlorine | 0.14 mg/L | 0.20 mg/L |
| April 12, 2016 | *E. coli* | 2,507 col/100mL | 28,000 col/100mL |
| April 12, 2016 | Total Residue Chlorine | 0.14 mg/L | 0.21 mg/L |
| May 4, 2016 | *E. coli* | 2,507 col/100mL | 4,300 col/100mL |
| June 7, 2016 | *E. coli* | 487 col/100mL | 120,000 col/100mL |
| July 5, 2016 | *E. coli* | 487 col/100mL | 6,400 col/100 mL |
| August 9, 2016 | *E. coli* | 487 col/100mL | 5,800 col/100mL |

81.     Due to the Plant's egregious history, the alleged violations are intermittent and sporadic and will likely continue, especially when it rains and during the summer, when the permit limits are stricter.

82.     Because these discharges are in violation of the NPDES permit, the above-stated conduct constitutes violations of the CWA 33 U.S.C. § 1311(a).

### <u>Count II</u>
### The Oxford Plant Has Violated and Will Continue to Violate Its NPDES Permit Reporting Requirements.

83.     Riverkeeper incorporates paragraph 1 through 82 by reference.

84.     NPDES Permit No. AL0058408 requires that the Oxford Plant notify the Department of any times the Plant "does not comply with any minimum or maximum discharge limitation." Section I.C.2.

85.     The Oxford Plant did not report any of the exceedances listed in Table 1 above.

86.     When the Plant did report violations in its Discharge Monitoring Reports ("DMRs"), the Plant did not report the correct number of violations.

87.     A violation of a monthly average constitutes a violation for every day of that month. *United States v. Aluminum Co. of Am.*, 824 F. Supp. 640, 650 (E.D. Tex. 1993); *See also*, *Atlantic States Legal Foundation, Inc. v. Tysons Foods, Inc.,* 897 F.2d 1128, 1140 (11th Cir.1990).

88.     When one monthly (or weekly) average was exceeded, the Oxford Plant reported the number of exceedances as "1" when it should have reported the number of days in the month (or week) in Oxford's Discharge Monitoring Report. See Table 2 below.

| Table 2: Months in Which Oxford Did Not Correctly Report Violations | | |
|---|---|---|
| **Month of Reporting Violation on Discharge Monitoring Report** | **Number of Violations** | **Explanation of Reporting Violation** |
| July 2014 | 1 | "No. Ex" on DMR for CBOD is "1" when it should be 31. |
| September 2014 | 3 | "No. Ex" on DMR for CBOD is "2" when it should be 67. |
| October 2014 | 2 | "No. Ex" on DMR for CBOD is "2" when it should be 38. |
| June 2015 | 4 | "No. Ex" on DMR for Ammonia is "4" when it should be 74. |

89.     These violations are intermittent and sporadic and will likely occur every time a monthly or weekly average is violated.

90.     Because these discharges are in violation of the permit, the above-stated omissions constitute violations of the CWA 33 U.S.C. § 1311(a).

## Count III
### The Oxford Plant's Unpermitted Formaldehyde Discharges.

91.    Riverkeeper incorporates herein paragraphs 1 through 90 by reference.

92.    Section 301(a) of the CWA prohibits the discharge of pollutants not authorized by the terms of a NPDES permit.  33 U.S.C. § 1311(a).

93.    The Oxford Plant has discharged formaldehyde without a permit, on an ongoing basis. Formaldehyde is a hazardous substance that is not listed as a permitted discharge per NPDES Permit No. AL0058408. Formaldehyde was also not listed in the Oxford Plant's application for a permit.

94.    On April 24, 2012, ADEM completed an inspection report, and facility personnel explained then that Kronospan was discharging a large amount of formaldehyde into the Oxford Plant which "was affecting water treatment."

95.    In addition, the following samples of formaldehyde were taken from the Plant's effluent:

| Table 3: Formaldehyde Violations[11] | | | |
|---|---|---|---|
| **Date** | **Discharge amount in mg/L** | **TLL lab order number** | **Violation** |
| March 2, 2012 | 1.30 | 120301002-001 | Discharging without a permit |
| March 21, 2012 | 0.97 | 120322002-002 | Discharging without a permit |
| June 13, 2012 | 0.59 | 120615012-002 | Discharging without a permit |
| June 14, 2012 | 0.60 | 120615055-002 | Discharging without a permit |
| June 15, 2012 | 0.53 | 120619003-002 | Discharging without a permit |
| June 18, 2012 | 0.48 | 120620003-002 | Discharging without a permit |

[11] Letter from Wayne Livingston, Oxford, to David Phillips, EPA, Re: Information Request - Section 308 of the Clean Water Act, August 14, 2012. (Attachment from TTL regarding formaldehyde testing.)

| June 19, 2012 | 0.46 | 120620064-001 | Discharging without a permit |
| June 20, 2012 | 0.48 | 120622030-002 | Discharging without a permit |
| June 21, 2012 | 0.30 | 120625008-002 | Discharging without a permit |
| June 22, 2012 | 0.85 | 120626001-002 | Discharging without a permit |
| June 25, 2012 | 0.84 | 120628001-002 | Discharging without a permit |
| June 26, 2012 | 0.82 | 120628003-002 | Discharging without a permit |
| July 9, 2012 | 0.96 | 120711001-001 | Discharging without a permit |
| July 10, 2012 | 0.39 | 120712029-002 | Discharging without a permit |
| July 11, 2012 | 0.65 | 120712016-002 | Discharging without a permit |
| July 12, 2012 | 0.60 | 120713088-002 | Discharging without a permit |
| July 13, 2012 | 0.44 | 120718004-002 | Discharging without a permit |
| July 16, 2012 | 0.39 | 120718005-002 | Discharging without a permit |
| July 17, 2012 | 0.39 | 120719002-002 | Discharging without a permit |
| July 18, 2012 | 0.46 | 120720056-002 | Discharging without a permit |
| July 19, 2012 | 0.98 | 120720057-002 | Discharging without a permit |

96.     In the August 12, 2014 and October 27, 2015 inspections, Oxford Plant personnel admitted that "they are still having problems with Kronospan's formaldehyde concentration" and that "their limits are too high". The October 2015 inspection was ADEM's latest inspection of the plant.

97.     On June 23, 2016, Kronospan announced a $362 million expansion which will add four production lines for creating laminate flooring panels and a particle board production facility, and in all likelihood will increase its discharge of formaldehyde to the Oxford Plant.

98.     On October 3, 2016, Meredith Holzer, Engineer from the Oxford Plant, wrote to ADEM that Oxford was still having problems with Kronospan's waste. In an email she explained, "Kronospan called our operator at the WWTP at 8 am to let us know there was an upset with their wastewater treatment process around 5 am.… flow with very high solids began to hit the plant around 8:30 am so the flow was diverted to the Equalization Basin. As of 2:30 pm, Oxford is still diverting the flow from Kronospan."

99.     These violations are intermittent and sporadic and will be ongoing.

## Demand for Relief

Riverkeeper respectfully requests that this Court grant the following relief:

A.      Render a judgment finding and declaring that the Oxford Plant has violated and is violating the Clean Water Act through the illegal and unpermitted discharges of pollutants.

B.      Issue an injunction ordering the Oxford Plant to immediately cease all ongoing and continuing CWA violations.

C.      Order all future samples collected by the Oxford Plant for permit compliance verification be analyzed in an independent, EPA-approved laboratory.

D.      Order frequent, unplanned, independent, audits of the Oxford Plant and Oxford's sampling procedures by a private engineering firm.

E.      Order the modification of the Oxford Plant's NPDES permit to require sampling and limits on formaldehyde.

F.      Order that the Oxford Plant enact and enforce pretreatment standards for formaldehyde that will be protective of the water quality standards in Choccolocco Creek.

G.      Assess a civil penalty of $37,500.00 for each and every actionable violation of the CWA alleged herein, in accordance with § 505(a), 33 U.S.C. § 1365(a) (*See* 40 C.F.R. Part 19).

H.      Award costs of litigation (including reasonable attorney and expert witness fees) to Riverkeeper in accordance with CWA § 505(d), 33 U.S.C. § 1365(d), and award Riverkeeper such other or different relief to which it may be entitled.

I.      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Riverkeeper demands a trial by jury in this action of all issues so triable.

_____
**s/ Sarah M. Stokes**
Sarah M. Stokes
Alabama Bar No. ASB-1385-A55S
Barry Brock
Alabama Bar No. ASB-9137-B61B
SOUTHERN ENVIRONMENTAL LAW CENTER
2829 2nd Avenue South, Suite 282
Birmingham, AL 35233
Telephone: (205) 745-3060
Facsimile: (205) 745-3064
Email: sstokes@selcal.org
          bbrock@selcal.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, I served the foregoing Complaint with the

Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United

States Postal Service the document to the non-CM/ECF participants below.

Hon. Loretta Lynch, Attorney General
U.S. Department of Justice
c/o Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P. O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Hon. Bob Perciasepe, Acting Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, D.C.  20460

Hon. Gwendolyn Keyes-Fleming, Regional Administrator
U.S. Environmental Protection Agency-Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street, SW
Atlanta, Georgia  30303-3104

Wayne Livingston
Oxford Waterworks and Sewer Board
P.O. Box 3663
Oxford, AL 36203
VIA CERTIFIED MAIL #

Luther Strange
Robert D. Tambling
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130

Carrie T. Blanton
Alabama Department of Environmental Management
Office of General Counsel
Post Office Box 301463
Montgomery, Alabama 36130-1463

_____
**s/ Sarah M. Stokes**

Exhibit 1

# SOUTHERN ENVIRONMENTAL LAW CENTER

Telephone 205-745-3060          2829 2ND AVENUE SOUTH, SUITE 282          Facsimile 205-745-3064
                                BIRMINGHAM, AL 35233-2838

August 3, 2016

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

The Honorable Leon Smith
Mayor, Oxford
P.O. Box 3383
Oxford, Alabama 36203

Mr. Steven Waits
Council President, Oxford
P.O. Box 3383
Oxford, Alabama 36203

Mr. Luke Whittle
Chairman of the Oxford Water Board
P.O. Box 3663
Oxford, AL 36203

Mr. Wayne Livingston
General Manager, Oxford Water Works and Sewer Board
P.O. Box 3663
Oxford, AL 36203

Ms. Meredith Holzer
Engineer, Oxford Water Works and Sewer Board
P.O. Box 3663
Oxford, AL 36203

Re:   60-Day Notice of Violations and Intent to File Citizen Suit under Section 505 of the
      Clean Water Act

Dear Messrs. Waits, Whittle, Livingston, Ms. Holzer, and Mayor Smith:

This letter is sent to notify you, the City of Oxford, the Oxford Water Works & Sewer Board ("Oxford"), the Alabama Department of Environment Management ("ADEM"), the United States Environmental Protection Agency ("EPA"), and the other entities and individuals named in this letter that Coosa Riverkeeper, Inc. ("Riverkeeper") and its members have identified violations of the Clean Water Act,[1] and the Alabama Water Pollution Control Act[2] at the Oxford Tull C. Allen Wastewater Treatment Plant. Riverkeeper hereby notifies you that it is prepared to file an action in the U.S. District Court for the Northern District of Alabama pursuant

---

[1] 33 U.S.C. §§ 1251-1387.
[2] AL Code Ann. § 22-22-1 *et seq.*

Charlottesville • Chapel Hill • Atlanta • Asheville • Birmingham • Charleston • Nashville • Richmond • Washington, DC

*100% recycled paper*

to § 505(a) of the Clean Water Act ("CWA"),[3] sixty days from the date of this letter or soon thereafter. This lawsuit will seek injunctive relief, appropriate monetary penalties, fees and costs of litigation, and such other relief as the Court deems appropriate, in order to address and correct the violations that are described in this letter.[4]

## I.   LOCATION OF VIOLATIONS

### A.   Choccolocco Creek on the Coosa River

Choccolocco Creek runs for over thirty miles[5] and is a tributary of the Coosa River, an aquatically biodiverse subwatershed of the Mobile River Basin.   According to the Water Resources Center at Auburn University, it "may support the largest number of endangered and threatened species found in any Alabama waterway of comparable size".[6]   The Geological Survey of Alabama, the U.S. Fish and Wildlife, and the Alabama Department of Conservation and Natural Resources have designated the area from the treatment plant to the Coosa River as a "priority area for conservation action."[7]

Choccolocco Creek is a popular area for recreational activities such as canoeing, kayaking, and fishing.  In addition, Choccolocco Creek is the base for a tubing business, Floating Fun, LLC, where tubers can float the creek in a tube. The main access point for Floating Fun, LLC is located approximately one mile downstream of the treatment plant effluent. Less than twenty-five miles downstream from the treatment plant, Choccolocco Creek empties into Logan Martin Lake on the Coosa River, where boaters fish and swim on a daily basis.

### B.   The Oxford Treatment Plant

The Oxford Tull C Allen Wastewater Treatment Plant ("Oxford WWTP") is located at 2975 Silver Run Road, Oxford, AL 36203. NPDES Permit No. AL0058408 authorizes the discharge of wastewater from Outfall 0011 into Choccolocco Creek. This is where a majority of the violations identified in this letter have occurred. Violations also occurred at overflow sites (*i.e.*, where sewage was released from the collection, transmission, or treatment system other than through permitted outfalls), as described in the chart labeled "*Sanitary Sewer Overflows (SSOs) and Upsets*" *See infra* Section III.G.i.

---

[3] 33 U.S.C. § 1365(a)(1).

[4] *See* 33 U.S.C. §§ 1365, 1319.

[5] The Nature Conservancy, *Middle Coosa River, Upper Coosa River, Eightmile Creek, and Cotaco Creek Watersheds Nonpoint Source Prioritization Project* , July 2004, 125, http://www.alnhp.org/reports/Coosa-vol-i.PDF (last visited June 30, 2016).

[6] Auburn University Water Resources Center, Rivers of Alabama Guide, Tributaries, http://aaes.auburn.edu/wrc/resource/rivers-of-alabama/coosa-basin/tributaries/ (last visited June 30, 2016). *See also*, US Fish and Wildlife Service, Endangered Species, *IPaC Information for Conservation and Planning*, https://ecos.fws.gov/ipac/project/U2SHMYDNFD27GSRGUZDX5E4PY/resources (last visited June 30, 2016) .

[7] *Id*. at 277;  *See also*, GSA, U.S. Fish & Wildlife, ADCNR, *Strategic Habitat and River Reach Units for Aquatic Species  of Conservation Concern in Alabama Map, available at,* http://www.gsa.state.al.us/gsa/eco/pdf/Special_Map_248.pdf

The WWTP serves approximately 28,700 people[8] and has a design flow of 4.5 million gallons per day.[9] It also serves approximately 12 industries that have significant industrial discharge permits.[10] The Oxford Water Works and Sewer Board also charges one of the lowest sewer rates in the state.[11]

## II.   ENFORCEMENT ACTIONS

The Oxford plant has had a twenty-five year history of violations and the plant continues to violate its permit to this day. The plant applied for its first permit in 1989,[12] and it began violating its permit three years later.[13]   From scanning only what was publically available, Riverkeeper ascertained that over the course of twenty-five years, it has had at least fifteen Notices of Violations.[14] The Oxford plant failed or has been cited for deficiencies in a large portion of its inspections and tests.[15] Besides problems with the operation of the plant, most of these inspections and tests noted problems with the method of Oxford's sampling.[16]

Additionally, it has received four administrative orders against it (in 1994, 1995, 2012, and 2013).[17] (Please see charts attached as Appendices 1, 2, and 3.) In the last two administrative orders alone, the plant violated its permit over 1400 times. However after twenty-five years of violations, the plant has only received one $20,450 fine in its history.[18] To put that in perspective, the Board receives that amount in one year in fees from one industrial discharger alone.[19]

In the March 21, 2012 Consent Order, Oxford was required to "fully comply with the Permit limitations for Total Ammonia – Nitrogen" by March 21, 2014.[20] In the last Unilateral Order, Oxford was required to be in full compliance with the permit limitations for Total

---

[8] ADEM and University of North Carolina Environmental Finance Center, *Water and Sewer Rates and Rate Structures in Alabama as of March 2014*, 12, http://www.efc.sog.unc.edu/sites/www.efc.sog.unc.edu/files/AL2014WaterSewerRatesTables_0.pdf (last visited June 30, 2016) .

[9] Oxford, *Application for NPDES Permit*, EPA Form 3510-2A, 3.

[10] Letter from Wayne Livingston, Oxford WWTP, to David Phillips, EPA, Re. Information Request, Section 308 of the Clean Water Act, Nov. 18, 2014.

[11] ADEM and University of North Carolina Environmental Finance Center, *Water and Sewer Rates and Rate Structures in Alabama as of March 2014*, http://www.efc.sog.unc.edu/sites/www.efc.sog.unc.edu/files/AL2014WaterSewerRatesTables_0.pdf (last visited June 30, 2016) .

[12] ADEM, *Public Notice, City of Oxford Applies for Permit to Operate New Wastewater Treatment Plant*, June 1, 1989.

[13]   Letter from Robert Bretzer (ADEM) to Glenn Dorsey (Oxford), *Incomplete DMR, NPDES Permit No. AL0058408*, Jan. 14, 1991.

[14] See Appendix 1.

[15] *See* Appendix 2.

[16]   *See* ADEM Inspections 9/15/1992, 7/18/1994, 9/30/1996, 11/18/1998, 8/11/2009, 8/12/2014, 12/16/2014.

[17] *See* Appendix 3.

[18] ADEM, *Consent Order No. 12-093-CWP*, March 21, 2012, p. 6.

[19] Email from Meredith Holzer (Oxford WWTP) to David Phillips (EPA) Re. Solids, Jan. 8, 2013.

[20] ADEM, *Consent Order No. 12-093-CWP*, March 21, 2012, F.

3

Suspended Solids ("TSS"), Fecal Coliform, Percent Removal of TSS, Carbonaceous Biochemical Oxygen Demand ("CBOD"), and Percent Removal of CBOD by July 29, 2014.[21]

## III.   DESCRIPTION OF THE VIOLATIONS

Section 301(a) of the Clean Water Act[22] prohibits the discharge of a pollutant to waters of the United States except, in relevant part, pursuant to a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to § 402. "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source,"[23] and "pollutant" includes "solid waste, . . . sewage, garbage, sewage sludge, . . . chemical wastes, biological materials, . . . heat, . . . rock, sand, . . . and industrial, municipal, and agricultural waste discharged into water."[24]

Under authority of the Alabama Water Control Pollution Act of 1975 and the authority delegated to the State of Alabama from the EPA, [25] ADEM has issued NPDES permit number AL0058408 for the Oxford Tull C. Allen Treatment Plant. This permit limits discharges into Choccolocco Creek and sets specific requirements for monitoring and reporting these discharges.[26] The most recent version of this permit was effective as of August 28, 2013 and will expire August 31, 2018. The previous iteration of the permit was issued on November 28, 2007 and expired on November 30, 2012.[27]

The 2013 permit states, "Any permit noncompliance constitutes a violation of the AWPCA and the FWPCA and is grounds for enforcement action, for permit termination, revocation and reissuance, suspension, modification, or denial of a permit renewal application." *See* Permit § II.D.1.a. (2013). The Oxford Waterworks and Sewer Board is required to record and submit Discharge Monitoring Reports ("DMRs") to show that it is complying with the permit. *See* Permit § I.C.1.b. (2013). These reports must be signed and certified. *See* Permit § I.C.1.d. (2013).[28] The plant must report any permit non-compliance on the DMRs. *See* Permit § I.C.2.a.-b. (2013).

Based on the review of these reports and other records prepared or kept by ADEM, as well as the Riverkeeper's own testing, the Oxford plant has violated the terms of NPDES Permit No. AL0058408. Violating the terms of a validly issued NPDES permit also constitutes a

---

[21] ADEM, *Unilateral Order no. 13-118-WP,* July 29, 2013, E.

[22] 33 U.S.C. § 1311(a).

[23] 33 U.S.C. § 1362(12)(A).

[24] 33 U.S.C. § 1362(6).

[25] 33 U.S.C. § 1342(b). Pursuant to Ala. Code § 22-22A-4(n), the Department is the state agency responsible for the promulgation and enforcement of water pollution control regulations in accordance with the FWPCA, 33 U.S.C. §§ 1251 to 1387. In addition, the Department is authorized to administer and enforce the provisions of the AWPCA and Ala. Code §§ 22-22-1 through 22-22-14.

[26] These requirements are examples of the State of Alabama's exercise of its delegated authority to impose permitting limitations in furtherance of the objectives of the Clean Water Act. As a result, the permit is enforceable through a citizen suit under the Clean Water Act. *See* 33 U.S.C. §§ 1370, 1311(b)(1)(B).

[27] ADEM, *NPDES Permit for the Water Works and Sewer Board of the City of Oxford*, AL0058408.

[28] *See also* 40 C.F.R. § 122.22(d) (requiring certification by authorized agent of permittee that information submitted with DMR is "true, accurate, and complete").

violation of the CWA.  33 USC § 1365(a). First, the plant has failed to ensure that all discharges "shall be limited … by the Permittee as specified" in Part I.A.1. of the permit, which contains a table detailing effluent limitations by pollutant parameter. Second, the plant has submitted incomplete or inconsistent reports and has failed to report many of its noncompliance notifications as required by the permit.  Third, the plant has discharged pollutants without a permit and at unpermitted locations. Fourth, Oxford has violated the required sampling methods. Fifth, it failed to fully comply with the toxicity requirements in the permit. And finally, it failed to properly maintain and operate the plant.

**A.**      **Each day when the Oxford Treatment Plant has operated in violation of its permit and each unauthorized discharge of a pollutant constitute a separate violation.**

Each violation of the permit—and each discharge that is not expressly authorized by the permit—constitutes a separate violation of the Clean Water Act. *See, e.g.*, 33 U.S.C. § 1319(d) ("penalty . . . per day for each violation"); *Sierra Club, Hawaii Chapter v. City & Cnty. of Honolulu*, 486 F. Supp. 2d 1185, 1190 (D. Haw. 2007) (summarizing holdings).

Based on a review of the DMRs and other reports prepared by the plant and sent to ADEM, and the Riverkeeper's own sampling, the Riverkeeper has identified over 300 numeric violations, 100 reporting violations (including incorrect reporting of bypasses and overflows), and 800 monitoring violations of the permit held by Oxford to discharge pollutants into Choccolocco Creek. [29]   40 C.F.R. § 135.3(a). None of these violations were part of ADEM's prior enforcement actions.

**B.**      **The Oxford Treatment Plant's own reports reveal numeric violations.**

*i.*      *The plant reported numeric violations*

The plant violated Section I.A.'s numeric effluent limitations. The first two columns of the chart show the "***Date of Violations***" and the ***"Number of Violations"*** that stem from the numeric violation. The next columns identify the "***Permit Parameter Violated***" (*i.e.*, which Permit § I.A. effluent limitation was violated); the "***Permit Limit***" (*i.e.*, the maximum or minimum effluent parameter value that the permit requires Oxford to achieve); the information "***Reported on DMR***" (*i.e.*, the numeric quantity for the parameter as reported on the DMR); and "***Additional Detail***…." reports the source of the information. All alleged violations of numeric limitations are based on the permittee's DMR submissions and occur after the expiration of ADEM's administrative orders.

---

[29] These charts are compilations of information from public records, and each is intended to provide notice of the pattern of violations described in this letter. These charts are not intended to be a definitive legal representation of all material facts.

| Numeric Violations | | | | | |
| --- | --- | --- | --- | --- | --- |
| Date of Violation(s) | Number of Violations | Permit Parameter Violated | Permit Limit | Reported on DMR | Additional Detail from DMR or Noncompliance Notification Form |
| July 31, 2014 | 31 | CBOD mg/L monthly average | 8.0 | 11 | DMR |
| August 31, 2014 | 31 | CBOD lbs/day monthly average | 300 | 326 | Reported on Noncompliance Notification Form not DMR. |
| August 31, 2014 | 31 | CBOD mg/L monthly average | 8.0 | 16 | Reported on Noncompliance Notification Form not DMR. |
| August 31, 2014 | 7 | CBOD mg/L max. weekly average | 12.0 | 16 | Reported on Noncompliance Notification Form not DMR. |
| September 30, 2014 | 30 | CBOD lbs/day monthly average | 300 | 331 | DMR |
| September 30, 2014 | 30 | CBOD mg/L monthly average | 8.0 | 17 | DMR |
| September 30, 2014 | 7 | CBOD mg/L max. weekly average | 12.0 | 20 | DMR |
| October 31, 2014 | 31 | CBOD mg/L monthly average | 8.0 | 10 | DMR |
| October 31, 2014 | 7 | CBOD mg/L max. weekly average | 12.0 | 20 | DMR |
| June 30, 2015 | 30 | Ammonia lbs/day monthly average | 37.5 | 116 | DMR |
| June 30, 2015 | 7 | Ammonia lbs/day max. weekly average | 56.2 | 136 | DMR |
| June 30, 2015 | 30 | Ammonia mg/L monthly average | 1.0 | 4.23 | DMR |
| June 30, 2015 | 7 | Ammonia mg/L max. weekly average | 1.5 | 5.15 | DMR |

6

**C. Based on the Riverkeeper's own testing, the plant violated multiple effluent limitations and reporting requirements of the permit.**

The Riverkeeper took samples of the plant's effluent at Outfall 0011 at the plant on the following dates and received the following results (see chart below).

| Daily Maximum Effluent Violations as Found by Riverkeeper | | | |
|---|---|---|---|
| Date | Parameter | Effluent Permit Limitation | Sample |
| February 23, 2016 | *E. coli* | 2507 col/100mL | 308,000 col/100mL |
| February 23, 2016 | Total Residue Chlorine | 0.14 mg/L | 0.21 mg/L |
| March 22, 2016 | Total Residue Chlorine | 0.14 mg/L | 0.20 mg/L |
| April 12, 2016 | *E. coli* | 2507 col/100mL | 24,117 col/100mL |
| April 12, 2016 | Total Residue Chlorine | 0.14 mg/L | 0.27 mg/L |
| May 4, 2016 | *E. coli* | 2507 col/100mL | 4,000 col/100mL |
| June 7, 2016 | *E. coli* | 487 col/100mL | 120,000 col/100mL |
| July 5, 2016 | *E. coli* | 487 col/100mL | 6400 col/100 mL |

The plant exceeded its permit's effluent limitations and it failed to notify the Department of these noncompliances per Section I.C.2. of the permit. In addition, it violated Section I.B. and/or I.C. of the permit which requires accurate monitoring and accurate reporting. The DMRs for these months (February, March, April, May, June, and July 2016) should have reported exceedances of the permit for *E. coli* and total residual chlorine, but they did not. The Permittee violated its monitoring and/or reporting requirements.

**D. The Oxford Treatment Plant's own reports reveal that the plant violated the reporting provisions of the permit.**

The Oxford plant violated reporting requirements contained in its permit. The column in the following chart labeled "***Month of Reporting Violation***" indicates the monthly reporting period during which the violation occurred; the "***Number of Violations***" column identifies how many violations stem from the reporting failure; the "***Permit Requirement Violated***" column identifies whether the violation involves the duty to report noncompliance and/or the failure to submit a discharge monitoring report; and the "***Explanation of Reporting Violation***" column provides additional information on the alleged violation. Failure to report is accounted for from May 2011 to the present. None of these were brought by ADEM under the past two orders.

7

| Reporting Violations | | | |
|---|---|---|---|
| Month of Reporting Violation | Number of Violations | Permit Requirement Violated | Explanation of Reporting Violation |
| July 2011 | 8 | Failed to Report on DMR and Duty to Report Noncompliance<br><br>(2007 NPDES Permit Section I.C.1.a.-b. and Section I.C.2.b.-c. of the 2007 Permit.) | During an NPDES inspection conducted on July 12, 2011 the permit limits were exceeded for D.O., fecal coliform, color, and percent removal of CBOD. This was not indicated on the DMR or in a Noncompliance Notification Form. |
| July 2013 | 5 | Duty to Report Noncompliance<br><br>(Section I.C.2.b-c) | According to the July 2013 DMR, ammonia lbs/day monthly average and weekly average, and ammonia mg/L monthly average and weekly average, and CBOD mg/L average exceeded the monthly average, yet no Noncompliance Notification Form was submitted. |
| July 2014 | 1 | | "No. Ex" on DMR for CBOD is "1" when it should be 31.[30] |
| August 2014 | 19 | DMR not submitted<br><br>(Section I.C.1.b.1) | The DMR for this month was not submitted. 19 effluent limitations went unreported. |

[30] "The vast majority of courts which have addressed the issue have held that a violation of a daily average constitutes a violation for every day of that month." *United States v. Aluminum Co. of Am.*, 824 F. Supp. 640, 650 (E.D. Tex. 1993) (citing U.*S. E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1407 (8th Cir.1990); *Atlantic States Legal Foundation, Inc. v. Tysons Foods, Inc.*, 897 F.2d 1128, 1140 (11th Cir.1990); *Atlantic States Legal Foundation, Inc. v. Universal Tool*, 786 F.Supp. 743, 746–47 (N.D.Ind.1992); *Public Interest Research Group of New Jersey v. Star Enterprise*, 771 F.Supp. 655, 668 (D.N.J.1991); *Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 611 F.Supp. 1542, 1552–53 (E.D.Va.1985), aff'd, 791 F.2d 304 (4th Cir.1986), *rev'd and remanded on other grounds*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), *remanded*, 844 F.2d 170 (4th Cir.), *judgment reinstated*, 688 F.Supp. 1078 (E.D.Va.1988), *aff'd in part, rev'd in part and remanded*, 890 F.2d 690 (4th Cir.1989); *United States v. Amoco Oil Co.*, 580 F.Supp. 1042, 1045 (W.D.Mo.1984)). *See also Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1138-40 (11th Cir. 1990); *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 527-28 (4th Cir. 1999).

| September 2014 | 3 | | "No. Ex" on DMR for CBOD is "2" when it should be 67. |
| October 2014 | 2 | | "No. Ex" on DMR for CBOD is "2" when it should be 38. |
| June 2015 | 4 | | "No. Ex" on DMR for Ammonia is "4" when it should be 74. |

*iii. The Oxford plant failed to properly report SSOs*

The Oxford plant failed to properly report its Sanitary Sewer Overflows (SSOs) both in its Municipal Water Pollution Prevention Reports (MWPPRs) and to report these overflows to the Department after they occurred. The "***Date of the Overflow or Bypass***" in the chart below provides the date of the overflow, the "***Number of Overflows or Bypasses***" describes the number of events that occurred. The "***Number of Violations***" describe how many permit terms were violated multiplied times the number of overflows. The "***Source***" column provides the citation where this information occurs. The "***Violation of the Permit***" describes which permit terms the City violated.

| Reporting SSOs Violations | | | | |
| --- | --- | --- | --- | --- |
| Date of Overflow or Bypass | Number of Overflows or Bypasses | Number of Violations | Source | Violation of Permit |
| 2011 | 4 | 20 | 2011 Municipal Water Pollution Prevention Report ("MWPPR"): "How many bypasses or overflow events of untreated wastewater occurred in the last year prior to the headworks of the WWTP due to heavy rain?" Answer: "4" | 2007 NPDES Permit Section I.C.2.e.1-5  Failure to report cause, date/ duration/volume, description of the source, location of the discharge, and the ultimate destination of discharge in the MWPPR. |
| 2011 | 3 | 3 | Reported Overflows in MWPPR, but did not file a Form 415 or otherwise report to the Department | 2007 NPDES Permit Section I.C.2.a.,d.,f or II.C. |
| 2012 | 6 | 30 | 2012 MWPPR: "How many bypasses or overflow events of untreated wastewater occurred in the last year prior to the headworks of the WWTP due to heavy rain?" Answer: "6" | 2007 NPDES Permit Section I.C.2.e.1-5  Failure to report cause, date/ duration/volume, description of the source, location of the discharge and the ultimate destination of discharge in the MWPPR |
| 2012 | 6 | 6 | Reported Overflows in MWPPR, but did not file a Form 415 or otherwise report to the Department | 2007 NPDES Permit Section I.C.2.a.,d.,f or II.C |
| 2014 | At least 2 | At least 2 | ADEM wrote to Oxford[31]: "comments received indicated that sanitary sewer overflows (SSOs) discharging into Choccolocco Creek have occurred." And Oxford did not | ADEM: " Permit Condition I.C.2.d states that "The permittee shall provide notification to the Director, the public, the county health department and any other affected entity such as public water systems, as soon as possible upon becoming aware of any notifiable SSO." Section I.C.2.a.,d.,f or II.C. |

[31] Letter from Emily Anderson, ADEM, to Wayne Livingston, Oxford WWTP, Re: Sanitary Sewer Overflows, NPDES Permit No. AL0058408, Oxford Tull C. Allen WWTP, Talladega County, Alabama, Feb. 25, 2014.

| | | | report these to the Department. | |
|---|---|---|---|---|
| | | | | |

**E. The plant did not report the adverse impacts caused by industrial dischargers nor did it prohibit these adverse impacts.**

Permit Condition II.G.3. requires that the Permittee report to the Department within seven days any adverse impact caused or believed to be caused by an indirect discharger on the treatment process, quality of discharged water, or quality of sludge. The Permittee repeatedly failed to do this. On July 12, 2011 and in April 26, 2012, ADEM completed compliance inspection reports and facility personnel explained then that Kronospan, one of the permitted industrial dischargers, was discharging a large amount of formaldehyde which was affecting water treatment. Yet, Oxford did not notify the Department of these adverse impacts after they occurred. The July 2013 Unilateral Order also stated that the "Permittee failed to report the adverse impact caused or believed to be caused from an indirect discharger."[32]  However, even after this Order, the plant did not correct the problem. In the August 2014 and October 2015 inspections, facility personnel admitted that "they are still having problems with Kronospan's formaldehyde concentration".[33] In addition, in the August inspection, the facility indicated that the red tint coming from the plant could be coming from TapeCraft.[34] However, in neither case did the plant notify the Department of these adverse impacts when they occurred, as required. When specifically asked, the operators admitted to the EPA that Kronospan affected the plant on November 30, 2015. Oxford, at that time, hadn't sent the information to ADEM then and it indicated that it had not sent this information at any time in the past.[35] David Phillips from the EPA specifically warned Oxford that the permit requires notification:

> The NPDES permit puts certain oversight responsibilities on the POTW regarding all existing industrial users, regardless of whether those users are SID permittees or not (page 19, Part II.G.2 and 3, and Part II.H). For example, reporting the observations and collected data to ADEM on the impacts at the lift station associated with Kronospan, and the steps OWWSB has taken, falls in line with meeting the requirement in Part II.H.3.  "Treatment works" is defined in federal pretreatment regulations as including all of the assets of the system including the lift stations (40 CFR 403.3(q)).

Only with the EPA watching and asking pointed questions did Oxford finally comply with this duty to report the adverse impacts from Kronospan for the first time in December 2015. Each time the plant allowed a prohibited interference of the plant or did not notify the Department of any adverse effect of an industrial discharger is a separate violation of the permit.

---

[32] ADEM, *Unilateral Order 3-118-WP 1*, July 28, 2013, #9.
[33] ADEM, *NPDES Compliance Inspection Reports*, August 12, 2014, October 27, 2015.
[34] ADEM, *NPDES Compliance Inspection Report*, August 12, 2014.
[35] Email from Meredith Holzer, Oxford WWTP, to David Phillips, EPA, Re: Oxford POTW operations, Dec. 8, 2015.

Additionally, Permit Condition II.H. prohibits: "1. Pollutants which create a fire or explosion hazard in the treatment works" and "3. Solid or viscous pollutants in amounts which will cause obstruction of flow in sewers, or the interference with the treatment works." Oxford does not prohibit Kronospan's discharge of formaldehyde which is a fire hazard nor does it limit the amount of solids that Kronospan continues to discharge.

**F. Oxford's information reveals multiple monitoring violations.**

Oxford's reports from the past three years[36] show that it violated the permit's requirement that all discharges "shall be . . . monitored . . . as specified" in Permit Conditions I.A.1.-2. These sections of the permit include tables that specify how frequently and where to monitor each parameter. The first column of the chart shows the "***Date***" of the violations, the second shows the "***Parameter Violated***"; the third shows the "***Permit Requirement***" (*i.e.*, the minimum number of measurements per monitoring period); the fourth shows the "***Monitoring Actually Reported***" (*i.e.*, the actual number of measurements performed by the permittee during the monitoring period, as listed in the permittee's eDMR data)[37] and the final column describes the number of violations committed.

| Date | Parameter Violated | Permit Requirement | Amount Monitored | Number of Violations |
|---|---|---|---|---|
| March 3-9, 2013 | E.coli | 3 times per week | 1 time per week | 7 |
| March 24-30, 2013 | E.coli | 3 times per week | 2 times per week | 7 |
| March 31- April 6, 2013 | Nitrogen, Ammonia | 3 times per week | 2 times per week | 7 |
| April 7-13, 2013 | Color | 3 times per week | 2 times per week | 7 |
| April 14-20, 2013 | Color | 3 times per week | 2 times per week | 7 |
| May 5-11, 2013 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| May 5-11, 2013 | Color | 3 times per week | 2 times per week | 7 |
| May 19-25, 2013 | Color | 3 times per week | 1 time per week | 7 |
| June 2-8. 2013 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| June 16-22, 2013 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| June 30-July 6, 2013 | Effluent TSS | 3 times per week | 2 times per week | 7 |
| June 30-July 6, 2013 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| June 30- July 6, 2013 | *E. coli* | 3 times per week | 1 time per week | 7 |
| July 7-13, 2013 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| July 7-13, 2013 | Color | 3 times per week | 2 times per week | 7 |
| July 21-27, 2013 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| July 21-27, 2013 | Color | 3 times per week | 1 time per week | 7 |
| July 28-August 3. 2013 | Color | 3 times per week | 2 times per week | 7 |
| August 4-10, 2013 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| August 11-17, 2013 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| August 18-24, 2013 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| August 18-24, 2013 | Color | 3 times per week | 2 times per week | 7 |

---

[36] Oxford is only required to keep its records from the past three years and the plant only provided data up to April 2016.
[37] Email Attachment from Boise Turner, Oxford's attorney, to Sarah Stokes, SELC, May 31, 2016.

| September 8-14, 2013 | Color | 3 times per week | 2 times per week | 7 |
|---|---|---|---|---|
| December 8-14, 2013 | Color | 3 times per week | 1 time per week | 7 |
| January 5-11, 2014 | Effluent BOD | 3 times per week | No testing recorded/incubator malfunction | 7 |
| January 12-18, 2014 | Color | 3 times per week | 1 time per week | 7 |
| January 19-25, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| January 26-February 1, 2014 | Color | 3 times per week | 2 times per week | 7 |
| February 2- 8 2014 | Color | 3 times per week | 2 times per week | 7 |
| February 9-15, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| February 23-March 1, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| February 23-March 1, 2014 | Color | 3 times per week | 2 times per week | 7 |
| March 2-8, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| March 16-22, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| March 16-22, 2014 | Color | 3 times per week | 2 times per week | 7 |
| March 23-29, 2014 | Color | 3 times per week | 2 times per week | 7 |
| March 30-April 5, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| April 6-12, 2014 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| April 6-12, 2014 | Color | 3 times per week | No testing recorded | 7 |
| April 6-12, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| April 13-19, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| April 13-19, 2014 | Color | 3 times per week | 2 times per week | 7 |
| April 13-19, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| April 20-26, 2014 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| April 27- May 3, 2014 | Color | 3 times per week | 2 times per week | 7 |
| May 25-31, 2014 | Color | 3 times per week | No testing recorded | 7 |
| May 25-31, 2014 | E.coli | 3 times per week | 1 time per week | 7 |
| May 25-31, 2014 | pH | 3 times per week | 2 times per week | 7 |
| June 29- July 5, 2014 | Color | 3 times per week | 2 times per week | 7 |
| June 29-July 5, 2014 | E. coli | 3 times per week | 2 times per week | 7 |
| July 13- 19, 2014 | E. coli | 3 times per week | 2 times per week | 7 |
| July 13-19, 2014 | Color | 3 times per week | 2 times per week | 7 |
| September 7-13, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| October 5-11, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| October 19-25, 2014 | Color | 3 times per week | 2 times per week | 7 |
| October 19-25, 2014 | E.coli | 3 times per week | No testing recorded | 7 |
| November 16-22, 2014 | Color | 3 times per week | 2 times per week | 7 |
| November 30-December 6, 2014 | Color | 3 times per week | 1 time per week | 7 |
| November 30-December 6, 2014 | E.coli | 3 times per week | 1 time per week | 7 |

13

| December 14-20, 2014 | Color | 3 times per week | 2 times per week | 7 |
|---|---|---|---|---|
| December 14-20, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| December 21-27, 2014 | E.coli | 3 times per week | 2 times per week | 7 |
| December 28, 2014 – January 3, 2015 | Color | 3 times per week | 2 times per week | 7 |
| December 28, 2014 – January 3, 2015 | E.coli | 3 times per week | 1 time per week | 7 |
| January 4-10, 2015 | Color | 3 times per week | 1 time per week | 7 |
| January 11-17, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| January 25-31, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| February 8-14, 2015 | Color | 3 times per week | 2 times per week | 7 |
| February 8-14, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| March 29-April 4, 2015 | Color | 3 times per week | 2 times per week | 7 |
| April 5-11, 2015 | Color | 3 times per week | 2 times per week | 7 |
| April 19-25. 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| April 26-May 2, 2015 | E.coli | 3 times per week | 1 time per week | 7 |
| May 17-23, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| May 24-30, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| May 31-June 6, 2015 | E.coli | 3 times per week | No testing recorded | 7 |
| June 14-20, 2015 | E.coli | 3 times per week | 1 time per week | 7 |
| June 28-July 4, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| July 5-11, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| July 12-18, 2015 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| July 26-August 1, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| August 9-15, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| August 23-29, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| September 6-12, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| September 6-12, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| September 20-26, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| October 18-24, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| October 18-24, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| October 25-31, 2015 | Color | 3 times per week | 2 times per week | 7 |
| October 25-31, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| November 1-7, 2015 | Color | 3 times per week | 2 times per week | 7 |
| November 8-14, 2015 | Color | 3 times per week | 2 times per week | 7 |
| November 15-21, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| November 15-21, 2015 | Color | 3 times per week | 2 times per week | 7 |
| November 15-21, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| November 22-28, 2015 | Color | 3 times per week | 2 times per week | 7 |
| November 29- | Color | 3 times per week | 2 times per week | 7 |

| | | | | |
|---|---|---|---|---|
| December 5, 2015 | | | | |
| November 29-December 5, 2015 | E.coli | 3 times per week | 1 time per week | 7 |
| December 13-19, 2015 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| December 20-26, 2015 | Color | 3 times per week | 2 times per week | 7 |
| December 20-26, 2015 | E.coli | 3 times per week | 2 times per week | 7 |
| December 27, 2015 – January 2, 2016 | Color | 3 times per week | No testing recorded | 7 |
| December 27, 2015 – January 2, 2016 | E.coli | 3 times per week | 2 times per week | 7 |
| December 27, 2015 – January 2, 2016 | Effluent BOD | 3 times per week | 1 time per week | 7 |
| January 3-9, 2016 | Color | 3 times per week | 2 times per week | 7 |
| January 17-23, 2016 | Color | 3 times per week | 2 times per week | 7 |
| January 24-30, 2016 | Color | 3 times per week | 2 times per week | 7 |
| January 24-30, 2016 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| January 24-30, 2016 | E.coli | 3 times per week | 2 times per week | 7 |
| January 31-February 6, 2016 | Color | 3 times per week | 1 time per week | 7 |
| February 14-20, 2016 | Color | 3 times per week | 2 times per week | 7 |
| February 21-27, 2016 | Color | 3 times per week | 1 time per week | 7 |
| February 21-27, 2016 | E.coli | 3 times per week | 2 times per week | 7 |
| February 28-March 5, 2016 | Color | 3 times per week | No testing recorded | 7 |
| February 28-March 5, 2016 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| March 20-26, 2016 | E.coli | 3 times per week | 2 times per week | 7 |
| March 27-April 2, 2016 | Effluent BOD | 3 times per week | 2 times per week | 7 |
| | | | Total | 819 |

## G. The plant discharged pollutants without a permit.

### i. *Sanitary Sewer Overflows and Upsets*

The plant is only authorized to release discharges that are in compliance with an NPDES permit that contain technology-based effluent limitations based upon secondary treatment and any needed water-quality-based effluent limitations. "As SSOs by nature occur in the collection system before secondary treatment, they can never comply with the secondary treatment standard and are thus viewed as prohibited by the CWA." [38] These SSOs and upsets are not in compliance with Oxford's permit and therefore are prohibited by the Clean Water Act. These violations were not mentioned in ADEM's past two orders.

---

[38] Ryan, Mark, *The Clean Water Act Handbook*, 3rd ed., 2011, p. 94. 33 U.S.C. S 1311(a)-(b)(1)(B).

| SSO Violations | | | | |
|---|---|---|---|---|
| Date of Sanitary Sewer Overflow | Number of Overflows | Amount Discharged | Location of Discharge | Source of the Overflow |
| June 28, 2011 | 1 | 8,000 gal | Headworks of Tull C. Allen WWTP | SSO Event Reporting Form: The known or suspected cause of the overflow was that the "operator replaces teeth on the screen at headworks. The power was not turned back on, which caused the screen to backup and overflow." |
| 2011 | 4 | Unknown | Trinity Pumping Station; Corner of Meadow Ave and US Hwy 21, South of Friendship Lift Station; Snow Street | 2011 Municipal Pollution Prevention Report "How many bypass or overflow events of untreated wastewater occurred in the last year prior to the headworks of the WWTP due to heavy rain?" Answer: "4" |
| 2012 | 6 | Unknown | Hwy 21 to Airport Rd; Friendship Lift Station to Hwy 21 Lift Station; 4th Street | 2012 MPPR Language "How many bypass or overflow events of untreated wastewater occurred in the last year prior to the headworks of the WWTP due to heavy rain?" Answer: "6" |
| December 25, 2014 | 1 | 250 gal | 59 Bailey St, Oxford, AL 36203 | SSO Reporting Form: The suspected or known cause of the overflow was a clog in the sewer line. |
| November 10, 2015 | 1 | Over 10,000 gal | 801 Boozer Drive, Oxford, AL 36203 | SSO Reporting Form: The overflow was caused by excessive rain. |
| December 24, 2015 | 1 | Over 10,000 gal | Hickory Drive and Airport Road | SSO Reporting Form: Rains caused manholes to be submerged. |
| December 26, 2015 | 1 | Over 100,000 gal | Friendship Lift Station | SSO Reporting Form: Overflow lasted 6 days, and was caused by excessive rain. |

     ii.    *Based on the information from TTL, the Permittee is knowingly discharging sewer stormwater at unpermitted locations.*

In the Stormwater Management Plan, Tuscaloosa Testing Laboratory ("TTL") was hired as a consultant to compose a Stormwater Management Plan for the plant as required by the permit (Section IV.F.2.). The company warned the plant that it was discharging at an "unpermitted location". TTL notes that based on information provided during the site visit, stormwater from sewage sludge storage areas, the dewatering area, and active portions of the facility flow out an

"unpermitted outfall location".[39] TTL recommended that either the NPDES permit be altered or it recommended that the plant direct stormwater that contacts sewage sludge, screenings, raw or partially treated wastewater, and disposal containers to a *permitted* outfall, that has a filter or pumped into the wastewater system to be treated.[40] TTL makes the case that the Permittee is discharging at an unpermitted location.

*iii.*     *The plant is discharging formaldehyde without a permit.*

The plant is discharging formaldehyde. Oxford's permit does not allow for any discharge of formaldehyde. Formaldehyde was not mentioned as a potential pollutant in the NPDES application. In October 2015, ADEM inspected the plant, and Oxford facility personnel indicated that they were still having problems with Kronospan's formaldehyde concentration and that their limits were too high. TTL has done some testing of Oxford's effluent and found that the plant discharged formaldehyde, many times at levels that potentially violate Choccolocco Creek's water quality standard. See Chart below.

| Formaldehyde Violations | | | |
|---|---|---|---|
| **Date** | **Discharge amount in mg/L** | **TLL lab order number** | **Violation** |
| 3/2/12 | 1.30 | 120301002-001[41] | Discharging without a permit |
| 3/21/12 | 0.97 | 120322002-002 | Discharging without a permit |
| 6/13/12 | 0.59 | 120615012-002 | Discharging without a permit |
| 6/14/12 | 0.60 | 120615055-002 | Discharging without a permit |
| 6/15/12 | 0.53 | 120619003-002 | Discharging without a permit |
| 6/18/12 | 0.48 | 120620003-002 | Discharging without a permit |
| 6/19/12 | 0.46 | 120620064-001 | Discharging without a permit |
| 6/20/12 | 0.48 | 120622030-002 | Discharging without a permit |
| 6/21/12 | 0.30 | 120625008-002 | Discharging without a permit |
| 6/22/12 | 0.85 | 120626001-002 | Discharging without a permit |
| 6/25/12 | 0.84 | 120628001-002 | Discharging without a permit |
| 6/26/12 | 0.82 | 120628003-002 | Discharging without a permit |
| 7/9/12 | 0.96 | 120711001-001 | Discharging without a permit |
| 7/10/12 | 0.39 | 120712029-002 | Discharging without a permit |
| 7/11/12 | 0.65 | 120712016-002 | Discharging without a permit |
| 7/12/12 | 0.60 | 120713088-002 | Discharging without a permit |
| 7/13/12 | 0.44 | 120718004-002 | Discharging without a permit |
| 7/16/12 | 0.39 | 120718005-002 | Discharging without a permit |
| 7/17/12 | 0.39 | 120719002-002 | Discharging without a permit |
| 7/18/12 | 0.46 | 120720056-002 | Discharging without a permit |
| 7/19/12 | 0.98 | 120720057-002 | Discharging without a permit |

---

[39] Letter from Stacey Tarrant and Sheryle Reeves, TTL, to Meredith Holzer, Oxford WWTP, Aug. 28, 2014.
[40] *Id.*
[41] Letter from Wayne Livingston, Oxford, to David Phillips, Re: Information Request - Section 308 of the Clean Water Act, August 14, 2012. (Attachment from TTL regarding formaldehyde testing.)

**H. The plant violated its toxicity requirements.**

The plant violated the toxicity testing requirements specified in the permit. The permit requires a short-term chronic toxicity test every year on the wastewater at Outfall 0011 (IV.B.). The samples must be diluted with 14% effluent and 86% water per IV.B.1.b. However, in 2011, 2012, and 2013, the plant used 13% effluent and 87% water, potentially skewing the toxicity test. In addition, in the 2013 toxicity test, the plant's consultants did not take the samples on the correct days.

| Toxicity Testing Violations | | | |
|---|---|---|---|
| Date | Violation | Source | Permit Section Violated |
| August 23, 2011 | Effluent Concentration 13% | August 2011 Toxicity Test Report Summary | Part IV.B.1.a |
| August 14, 2012 | Effluent Concentration 13% | August 2012, Toxicity Test Report Summary | Part IV.B.1.a |
| October 8, 2013 | Effluent Concentration 13% | October 2013, Toxicity Test Report Summary | Part IV.B.1.b |

**I. ADEM has found violations that indicate problems with Oxford's sampling procedures.**

While Oxford's DMRs show hundreds of violations based on its data, that very data is questionable. Since the early 1990s, the plant has been cited for its questionable sampling methods. In 1992, three years after the plant opened, it received a "D" in the performance audit inspection. ADEM found that the "major procedural problems make the data highly questionable".[42] These problems continue today in contra to Permit I.B.7 and II.A.1, 40 CFR Part 136, Standard Methods, and EPA's Methods.[43] In July 2011, ADEM found that the sample tubing was placed so that only half of the plant's wastewater could be tested instead of testing where the two streams are mixed.[44] In August 2014, the effluent sampling refrigerator was kept at too high a temperature.[45] In December of 2014, a multitude of sampling deficiencies were found. (1. The facility did not have chains of custody for samples analyzed in-house that noted the date and time that samples were collected and by whom they were collected. 2. The sample tube on the influent sampler between the sampler and the sample container was contaminated by solids attached to the pump tubing wall. 3. There were no certified weights on site. 4. The thermometers need to be checked and recorded along with the balance. 5. There should not be drinks and food stored with the samples. 6.CBOD, TSS, *E coli*, Ammonia, and color testing methods were found to be "inadequate". 7. Laboratory personnel were not able to provide all

---

[42] 1992 Performance Audit Inspection.
[43] American Public Health Association, et. al, *Standard Methods for examination of water and wastewater*, 22nd ed. Washington, 2012.
[44] ADEM, *NPDES Compliance Inspection Report*, July 12, 2011.
[45] ADEM, *NPDES Compliance Inspection Report*, August 12, 2014.

necessary Standing Operating Procedures. 8. The *E. coli* media plates had expired.) Several other deficiencies were discovered as well. We are incorporating all the deficiencies in that inspection and those regulations and methods that regulate those practices by reference.[46] To this day, it is not known whether all data is currently reliable and all violations have been addressed.

In fact, when ADEM last tried to inspect the plant on October 27, 2015, facility personnel told ADEM inspectors that the Creek had flooded and conditions to travel to the outfall were unsafe.[47] However, the Choccolocco Creek gauges indicated that the river was at its average flow and stage that day and had been for the last two days.

**J. Oxford's Stormwater Management Plan and DMRS are not signed by the proper authority.**

The permit (Part IV.F.2.a.8.) specifies that the stormwater plan "bear the signature of an individual meeting signatory requirements as defined in ADEM Administrative Code, Rule 335-6-6-.09." Although the name of the General Manager of the plant, Wayne Livingston, is on the plan, he has not signed it.[48]

Further, Oxford's DMRs, like all reports and forms required to be submitted under the NPDES Permit, must be electronically signed by a "responsible official" of Oxford or a "duly authorized representative" of such official.[49] The terms "responsible official" and "duly authorized representative" are defined in ADEM Administrative Code Rule 335-6-6-.09. A "responsible official" of a public entity is defined as "either a principal executive officer, or ranking elected official."[50] A person is a "duly authorized representative" only if (1) the responsible individual makes the authorization in writing, (2) the authorization specifies either an individual or a position having responsibility for the overall operation of the regulated facility or activity, and (3) the authorization is submitted to ADEM.[51]

Oxford's DMR indicates that Meredith Holzer was the "principal executive officer or authorized agent" who signed the DMR. Ms. Holzer is Oxford's engineer.[52] Oxford's e-file on the ADEM website does not include any documentation of Oxford General Manager Wayne Livingston authorizing Meredith Holzer in writing to submit DMRs to ADEM on behalf of Oxford. It does not appear that Ms. Holzer is a duly authorized representative.

**K. ADEM found the plant has not properly been operated and maintained.**

Permit Section II.A. states that "the Permittee shall at all times properly operate and maintain all facilities and systems of treatment and control…which are installed or used by the Permittee to achieve compliance with the conditions of the permit. Proper operation and

---

[46] ADEM, *NPDES Compliance Inspection Report*, December 16, 2014.
[47] ADEM, *NPDES Compliance Inspection Report*, October 15, 2015.
[48] Email Attachment from Boise Turner, attorney representing Oxford, to Sarah Stokes, SELC, May 3, 2016.
[49] NPDES Permit Part I.C.1.d, at page 11.
[50] ADEM Administrative Code Rule 335-6-6-.09(1)(d).
[51] ADEM Administrative Code Rule 335-6-6-.09(2)(a) to (c).
[52] Oxford Water Works, Organization, http://www.oxfordwater.com/Default.asp?ID=27&pg=Organization (last visited June 30, 2016).

maintenance includes effective performance, adequate funding, adequate operator staffing and training, and adequate laboratory and process controls, including appropriate quality assurance procedures." In several cases, ADEM found that the facilities were not being maintained and operated properly. In December of 2014, ADEM found that the equalization basin had a large amount of solids on the walls and that the laboratory personnel were not able to provide all necessary Standing Operating Procedures. And in October of 2015, the lift stations were "unsatisfactory".[53]

## IV. THE VIOLATIONS ARE LIKELY TO CONTINUE

There is a reasonable likelihood that the violations identified in this letter will continue. *See Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49 (1987). ADEM is aware of some of these violations, since ADEM has recorded many of them in its inspections. However, ADEM has failed to sufficiently address them; ADEM's four administrative actions have yet to solve the problem. The extent of the violations as laid out above, and the fact that they have been occurring consistently since the 1990s, indicate that they are ongoing and continuing violations. In addition, Riverkeeper has found new violations that have been ongoing for the last six months.

## V. PERSONS RESPONSIBLE FOR VIOLATIONS

A citizen may commence a civil action against any person who is alleged to be in violation of the Clean Water Act. 33 U.S.C. § 1365(a)(1). Under the Act, "person" includes municipalities and boards. 33 U.S.C. § 1362(5). *See also* 33 U.S.C. § 1362(4). The Oxford WWTP is owned and operated by the Oxford Water Works and Sewer Board and the City of Oxford.[54]

## VI. PERSONS GIVING NOTICE

Coosa Riverkeeper, Inc. is a non-profit corporation with its principal office at 102-B Croft Street, Birmingham, Alabama 35205. The Riverkeeper's mission is to protect, restore, and promote the Coosa River and its tributaries in Alabama. The Coosa Riverkeeper is a membership organization with members who live along the Coosa River and Choccolocco Creek near the Oxford sewage treatment plant and its outfall or who recreate on the Creek near the plant. The violations identified above have negatively impacted Choccolocco Creek, its watershed, and Coosa Riverkeeper's members. The name, address, and telephone number of the persons giving notice is:

> Coosa Riverkeeper, Inc.
> 102-B Croft Street
> Birmingham, AL 35242

---

[53] ADEM, *NPDES Compliance Inspection Report*, October 15, 2015.
[54] City of Oxford Ordinance, Chap. 44. Article 1, Section 44-1; *See also* Environmental Protection Agency, *FRS Facility Detail Report*, 2000
https://iaspub.epa.gov/enviro/fii_query_detail.disp_program_facility?p_registry_id=110000523363 (last visited June 30, 2016).

205-981-6565

Mrs. Justinn Overton
Executive Director, Coosa Riverkeeper, Inc.
102-B Croft Street
Birmingham, AL 35242
205-981-6565

Cecil Bostany
President, Board of Directors, Coosa Riverkeeper, Inc.
102-B Croft Street
Birmingham, AL 35242
205-981-6565

**VII.   CONCLUSION**

If you have any questions concerning this letter or the described violations, or if you believe it is incorrect in any respect, please contact the undersigned counsel at the Southern Environmental Law Center. During the notice period, we are available to discuss this matter with you. For many years, Coosa Riverkeeper has worked with sewage treatment plants, local municipalities, and state and federal agencies on projects to study, maintain, restore, and protect the Coosa River and its tributaries. This letter is not meant to disrupt these productive relationships. Although sent pursuant to 33 U.S.C. § 1365, Riverkeeper believes a negotiated settlement of the identified violations, codified through a court-approved agreement, would be more productive than protracted litigation. Injunctive relief, appropriate monetary penalties, fees and costs of litigation are potentially available remedies, *see* 33 U.S.C. §§ 1365, 1319, 1365, but Riverkeeper would prefer to work with the Board, the City, and the other relevant parties to further study, develop and implement a plan that ensures that Choccolocco Creek meets all requisite permit requirements.

Thank you for your prompt attention to this matter.

Sincerely,

*Sarah Stokes*

Sarah Stokes
Staff Attorney, Birmingham Office
Southern Environmental Law Center
2829 Second Ave. S.
Ste. 282
Birmingham, AL 35233
tel:  (205) 745-3060
fax: (205) 745-3064
www.southernenvironment.org

Barry Brock
Senior Attorney, Birmingham Office
Southern Environmental Law Center
2829 Second Ave. S.
Ste. 282
Birmingham, AL 35233
tel:  (205) 745-3060
fax: (205) 745-3064
www.southernenvironment.org

cc: (via email and U.S. Mail)

Ms. Regina A. McCarthy
Administrator
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue
Mail Code: 1101A
Washington, D.C. 20460

Ms. Heather McTeer Toney
Regional Administrator
U.S. EPA, Region 4
Sam Nunn Atlanta Federal Center
61 Forsyth Street, S.W.
Main Code: 9T25
Atlanta, GA 30303-8960

Mr. Lance LeFleur
ADEM Director
ADEM Montgomery Office
1400 Coliseum Boulevard
Montgomery, AL 36110

Mr. Boice Turner
The Law Office of
T. Boice Turner, Jr., LLC
1100 Woodstock Avenue
Anniston, AL 36207

Ms. Glenda Dean, ADEM
Mr. Scott Hughes, ADEM
Ms. Schuyler Espy, ADEM
Carla Seiwert, EPA
Suzanne Armor, EPA
David Phillips, EPA

22

| Appendix 1- Notices of Violation | |
|---|---|
| Date | Reason for Notice |
| 4/10/1992 | Failed to report monitoring results for TSS |
| 8/19/1992 | Ammonia concentration exceeded limits |
| 10/19/1992 | Ammonia concentration exceeded limits |
| 12/06/1993 | Failed Toxicity Test |
| 7/13/1994 | Failed to meet minimum pH |
| 9/09/1994 | Failed to report monitoring results for TKN |
| 10/25/1994 | Failed to report monitoring results for TKN |
| 3/21/1995 | Total residual Chlorine, TSS quantity and concentration exceeded limits. Failed to meet minimum TRC End Chlorine Contact |
| 4/10/1995 | Total residual Chlorine exceeded limits. Failed to meet minimum TRC End Chlorine Contact |
| 5/17/1995 | Total residual Chlorine exceeded limits. Failed to meet minimum TRC End Chlorine Contact |
| 7/20/1995 | Total residual Chlorine, TSS quantity and concentration exceeded limits. |
| 8/23/1995 | Total residual Chlorine, and TSS concentration exceeded limits. |
| 8/14/1996 | TSS quantity and concentration exceeded limits |
| 6/05/2008 | Discharge of wastewater that did not meet permit limits and failure to report monthly geometric mean for the Fecal Coliform parameter. |
| 8/07/2008 | Missing Discharge Monitoring Reports. Miscalculation of Fecal Coliform bacteria in January 2008. |

| **Appendix 2 - Inspection Deficiencies** |
|---|---|
| **Date** | **Deficiencies** |
| 9/15/1992 | Received "D" on Performance Audit Inspection; "Due to lack of any QA/QC program…data for this facility should be considered as marginal." |
| 6/22/1993 | Received "Conditional Acceptance" on Operation and Maintenance Inspection |
| 10/18/1993 | "Several deficiencies were noted" and "several areas received an evaluation rating of marginal or unsatisfactory". "Deficiencies were noted in the areas of records/reports, sampling, and laboratory. The deficiencies noted could impact the integrity of the data submitted in the DMRs." "A QA plan had not been developed." |
| 3/29/1994 | Received "Unacceptable" on Operation and Maintenance Inspection. |
| 7/18/1994 | Significant differences in results obtained by ADEM lab and the reported sample for several parameters. |
| 11/21/94 | Received "less than acceptable performance evaluation" on EPA's Discharge Monitoring Report/ Quality Assurance results |
| 9/30/1996 | Sampling and pH calibration were not implemented. "Facility is not collecting composite samples as discussed last inspection (3/12/96) as required by permit." |
| 11/18/1998 | Failed toxicity test partly because chain of custody was invalid. |
| 7/17/2000 | Evidence of head works to plant overflowing, heavy algae growth in clarifier, one clarifier out of service due to low flow conditions, weeds and plants growing from walls of chlorine contact chamber, sludge stockpiled in floodplain below plant, and sludge dumped into woods in sink holes. |
| 1/31/2001 | Received "Unacceptable" on Operation and Maintenance Inspection |
| 5/29/2002 | Received "Conditional Acceptance" on Operation and Maintenance Report. |
| 4/16/2004 | Received "Conditional Acceptance" on Operation and Maintenance Report. |
| 8/11/2009 | "Samples run in house had no chains of custody", facility was only using 1 of 2 aeration basins and 1 of 2 secondary clarifiers, facility's effluent was dark brown in color, receiving stream was turbid and the facility's effluent cascade was overflowing with foam. |
| 9/01/2010 | Facility had two influents, exceeded the permitted daily maximum for Fecal coliform and total residue chlorine, the facility's effluent was dark brown, and the facility's CBOD and ammonia were higher than the permitted weekly and monthly averages. |
| 7/12/2011 | Facility's effluent surpassed its permitted limit for Fecal Coliform and was brown in color, the facility's effluent had a visible effect on the receiving stream, the composite sampler was placed where only half of the plant's wastewater would be sampled and the facility's effluent did not meet permit requirements for dissolved oxygen, fecal coliform, color, CBOD, and percent removal of CBOD and TSS. |
| 4/24/2012 | Facility's effluent was brown in color and created a plume of color visible for over 100 feet downstream, influent sampler location was not representative of waste contributed by Kronospan, and the facility had overflows at two manholes. |
| 7/15/2013 | Facility was operating under an expired permit, facility operators had problems with Kronospan, one of the clarifiers was out of operation, second clarifier was overloaded, plastic bottles were found in the drying beds, and discharge was darker than creek. |
| 8/12/2014 | "Treatment plant was still having issues with wastewater coming from Kronospan." One of the plants two secondary clarifiers was drained. The effluent had a red tint in color and sampling refrigerator was too hot. |
| 12/16/2014 | Equalization Basin had a large amount of solids on the walls, there were no chain of custody logs for samples analyzed in-house, and the pH buffers weren't in their original containers and were not labeled with expiration dates. The thermometers were not certified and sample tubes were contaminated with solids. Light gray effluent was flowing into Choccolocco Creek. Laboratory personnel were not able to provide all |

| | necessary Standard Operating Procedures. Chain of custody were not available for onsite samples. Therefore proper preservation and collection in accordance with EPA guidelines could not be confirmed." There were no certified weights on site, thermometers need to be checked and recorded and the ways CBOD, TSS E-coli and color were tested were inadequate. |
|---|---|
| 10/27/2015 | ADEM unable to collect samples during inspection because of creek flooding, and the lift stations were not operated by Oxford. |

**Oxford Historical Violations – Appendix 3**
TT = Failed Toxicity Test
INS = Inspection (received failing, unacceptable, marginal, or conditional acceptance grade)
NOV = Notice of Violation
**UO** = Unilateral Order
**CO** = Consent Order
**AO** = Administrative Order



[1] Received "D" on Performance Audit Inspection ("Major procedural problems make the data highly questionable. It should not be used to determine permit compliance, plant loading or future design loadings.")
[2] Received "Conditional Acceptance" on Operation and Maintenance Inspection ("Chlorine analyzer was not operating properly during the inspection." "facility operator to resubmit deficient DMR's for the months of April, May, and June 1993.")
[3] "Several deficiencies were noted...and several areas received an evaluation rating of marginal or unsatisfactory" ("Deficiencies were noted in the areas of records/reports, sampling, and laboratory. The deficiencies noted could impact the integrity of the data submitted in the DMRs.")
[4] Received "Unacceptable" on Operation and Maintenance Inspection ("Facility operator could not produce copies of the DMR's for this facility for inspection and review when requested by ADEM. Facility operational records such as DMR's are required to be maintained at the facility site at all times for review by ADEM.")
[5] "Several deficiencies were noted during the inspection" ("Split sample analyses dated July 19, 1994, indicate a significant difference in results obtained by our laboratory when compared with results reported by you." "Split sample analyses dated July 20, 1994, indicate a significant difference in results obtained by our laboratory when compared with results reported by you.")
[6] Received "less than acceptable performance evaluation" on EPA's Discharge Monitoring Report/ Quality Assurance results
[7] "Please note that further enforcement action is being considered." ("Facility is not collecting composite samples as discussed last inspection, as required by permit.")
[8] "Several deficiencies were noted during the inspection"
[9] Received "Unacceptable" on Operation and Maintenance Inspection
[10] Received "Conditional Acceptance" on Operation and Maintenance Report
[11] Received "Conditional Acceptance" on Operation and Maintenance Report
[12] Deficiencies noted during inspection ("Samples analyzed by TLL had chains of custody, samples run in house had no chains of custody.")
[13] Deficiencies noted during inspection
[14] Deficiencies noted during inspection ("The sample tubing of the facility's composite sampler was placed where only half of the plants wastewater would be sampled instead of where the two waste streams mixed.")
[15] Deficiencies noted during inspection (At the time of inspection, the facility's influent sampler location was not representative of waste contributed by Kronospan.")
[16] Facility was operating under an expired permit, facility operators had problems with Kronospan, one of the clarifiers was out of operation, second clarifier was overloaded, plastic bottles were found in the drying beds, and discharge was darker than creek.
[17] Deficiencies noted during inspection ("The effluent sampling refrigerator had a temperature of 7° C, which is above the maximum allowable temperature of 6° C.")
[18] Deficiencies noted during inspection ("The facility did not have chains of custody for samples analyzed in-house." "The sample tube on the influent sampler between the sampler and the sample container was contaminated with solids attached to the pump tubing wall." "There were no certified weights on site. The thermometers need to be checked and recorded along with the balance. There should not be drinks and food stored with the samples." "CBOD, TSS, e-coli, Ammonia, and color testing methods found to be inadequate.")



Exhibit 2



AlaFile E-Notice

61-CV-2016-900310.00

To:   ROBERT D. TAMBLING
       rtambling@ago.state.al.us

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF TALLADEGA COUNTY, ALABAMA

STATE OF ALABAMA ET AL V. OXFORD WATER WORKS AND SEWER BOARD
61-CV-2016-900310.00

The following complaint was FILED on 9/30/2016 8:24:31 AM

Notice Date:      9/30/2016 8:24:31 AM

BRIAN YORK
CIRCUIT COURT CLERK
TALLADEGA COUNTY, ALABAMA
P O BOX 6137
TALLADEGA, AL, 35160

256-761-2102
brian.york@alacourt.gov

ELECTRONICALLY FILED
9/30/2016 8:24 AM
61-CV-2016-900310.00
CIRCUIT COURT OF
TALLADEGA COUNTY, ALABAMA
BRIAN YORK, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Cas<br>61<br><br>Date of Filing:   Judge Code:<br>09/30/2016 |

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF TALLADEGA COUNTY, ALABAMA
### STATE OF ALABAMA ET AL v. OXFORD WATER WORKS AND SEWER BOARD

**First Plaintiff:** ☐ Business  ☐ Individual  **First Defendant:** ☐ Business  ☐ Individual
☑ Government  ☐ Other  ☑ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other:_____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☑ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:  F** ☑ INITIAL FILING  **A** ☐ APPEAL FROM DISTRICT COURT  **O** ☐ OTHER
**R** ☐ REMANDED  **T** ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☐ YES ☑ NO  **Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:** TAM001   9/30/2016 8:24:07 AM   /s/ ROBERT D. TAMBLING
Date   Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED



ELECTRONICALLY FILED
9/30/2016 8:24 AM
61-CV-2016-900310.00
CIRCUIT COURT OF
TALLADEGA COUNTY, ALABAMA
BRIAN YORK, CLERK

# THE CIRCUIT COURT OF
## TALLADEGA COUNTY, ALABAMA

STATE OF ALABAMA ex rel.,    )
LUTHER STRANGE,    )
ATTORNEY GENERAL    )
and the ALABAMA DEPARTMENT of    )
ENVIRONMENTAL MANAGEMENT,    )
    )
    Plaintiffs,    )    Civil Action No.
    )    CV-2016-_____
v.    )
    )
OXFORD WATERWORKS AND    )
SEWER BOARD,    )
    )
    Defendant.    )

## <u>COMPLAINT</u>

### THE PARTIES

1.    The Attorney General is authorized by Ala. Code § 22-22A-5(1), § 22-22-9(m), § 22-22A-5(12), and § 22-22A-5(18) (2006 Rplc. Vol.) to enforce the provisions of the Alabama Water Pollution Control Act (hereinafter "AWPCA"), which is found at Ala. Code §§ 22-22-1 through 22-22-14 (2006 Rplc. Vol.).  Specifically, Ala. Code § 22-22A-5(18)b. (2006 Rplc. Vol.) authorizes the Attorney General to bring a civil action for violation of permits issued under the AWPCA and for unpermitted discharges of pollutants in violation of said Act.  In addition, Ala. Code § 22-22A-5(18)c., as amended, authorizes the Attorney General to recover civil penalties for such permit violations and unpermitted discharges of pollutants, providing for a maximum of $25,000.00 per violation. The Attorney General is authorized by Ala. Code § 36-15-12 (2006 Rplc. Vol.) to institute and prosecute, in the name of the State, all civil actions and other proceedings necessary to protect the rights and interests of the State.

2.    The Alabama Department of Environmental Management (hereinafter "the

Department" or "ADEM") is a duly constituted department of the State of Alabama pursuant to Ala. Code §§ 22-22A-1 through 22-22A-17, as amended.  Pursuant to Ala. Code § 22-22A-4(n) (2006 Rplc. Vol.), the Department is the state agency responsible for the promulgation and enforcement of water pollution control regulations in accordance with the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1388.  In addition, the Department is authorized to administer and enforce the provisions of the AWPCA.

3.    The Oxford Waterworks and Sewer Board (hereinafter "the Permittee" or "the Defendant") operates a wastewater treatment plant (hereinafter "WWTP") known as the Oxford Tull C. Allen WWTP (hereinafter "Facility"). The Defendant discharges pollutants from the Oxford Tull C. Allen WWTP located at 2975 Silver Run Road, in Oxford, Talladega County, Alabama, into Choccolocco Creek, a water of the State.

## JURISDICTION AND VENUE

4.    The Court has jurisdiction and venue over this Complaint pursuant to Ala. Code § 22-22A-5(18)b. and § 22-22A-5(19) (2006 Rplc. Vol.).

## GENERAL ALLEGATIONS

5.    Pursuant to the National Pollutant Discharge Elimination System (hereinafter "NPDES") program administered by ADEM, the Department reissued NPDES Permit Number AL0058408 (hereinafter "the Permit") to the Defendant on November 28, 2007, effective December 1, 2007.  The Permit was again reissued August 28, 2013, effective September 1, 2013.  The Permit establishes limitations and conditions on the discharge of pollutants from a point source, described therein as Outfall 001, into Choccolocco Creek, a water of the State.  The Permit also establishes limitations and conditions on the discharge of stormwater from a point source, described therein as Outfall 001S, into Choccolocco Creek, a water of the State.  The

Permit requires that the Defendant monitor its discharges and submit periodic Discharge Monitoring Reports (hereinafter "DMRs") to the Department describing the results of the monitoring. The Permit also requires that the Defendant properly operate and maintain all facilities and systems of treatment and control which are installed or used by the Defendant to achieve compliance with the conditions of the Permit.

## I.  The Defendant's Discharges Violated its Permit Limitations and ADEM Regulations.

6.      Permit Condition I.A. requires that discharges be limited and monitored as specified in the Permit.

7.      The Defendant submitted DMRs for the monitoring periods included in Attachment A indicating that discharges from Outfall 0011 did not comply with the Permit limitations for Total Suspended Solids (hereinafter "TSS"), Total Nitrogen as Ammonia (hereinafter "NH3-N"), Fecal Coliform (hereinafter "FC"), 5-Day Carbonaceous Biochemical Oxygen Demand (hereinafter "CBOD"), CBOD Percent Removal, and TSS Percent Removal.

8.      ADEM Administrative Code r. 335-6-10-.09(5)(e)6. allows color-producing substances attributable to sewage in only such amounts as to not unreasonably affect the aesthetic value of waters.

9.      The Department inspected the Facility on April 24, 2012, and observed that the effluent from the Facility was brown in color. The plume of color remained visible in the receiving stream for over one hundred feet downstream, in violation of ADEM Admin. Code r. 335-6-10-.09(5)(e)6.

10.      The Department inspected the Facility on May 9, 2013, and observed that the effluent had a slight black tint.

11.     The Department inspected the Facility on July 15, 2013, and observed that the effluent discharge was slightly darker than the creek.

12.     The Department inspected the Facility on August 12, 2014, and observed that the effluent had a red tint.

13.     The Department inspected the Facility on December 16, 2014, and observed that the effluent was a light gray color that dissipated ten to twelve feet downstream of the discharge point.

## II. The Defendant Has Failed to Sample as Required by the Permit.

14.     The Permit requires the Permittee to monitor E. coli, NH3-N, Color, and effluent CBOD at least three days per week.

15.     The Defendant submitted sample collection and analysis documentation to the Department for the monitoring periods included in Attachment A indicating that it failed to monitor the discharges from Outfall 0011 a minimum of three days per week as required by the Permit.

16.     Permit Condition IV.B.1.a. of the Defendant's Permit issued November 28, 2007, and effective December 1, 2007, required the Permittee to perform short-term chronic toxicity tests on the wastewater from Outfall 001 at an Instream Waste Concentration (hereinafter "IWC") of fifteen percent effluent.

17.     The Defendant submitted Toxicity Test Report Summaries to the Department on September 29, 2011 and October 3, 2011 indicating that the Defendant conducted its August 16, 2011 toxicity test at an IWC of thirteen percent, in violation of Permit Condition IV.B.1.a.

18.    The Defendant submitted a Toxicity Test Report Summary to the Department on October 1, 2012, indicating that the Defendant conducted its August 14, 2012 toxicity test at an IWC of thirteen percent, in violation of Permit Condition IV.B.1.a.

19.    Permit Condition IV.B.1.a. of the Defendant's Permit issued August 28, 2013, and effective September 1, 2013, required the Permittee to perform shot-term chronic toxicity tests on the wastewater from Outfall 001 at an IWC of fourteen percent effluent.

20.    The Defendant submitted a Toxicity Test Report Summary to the Department on October 24, 2013, indicating that the Defendant conducted its October 1, 2013 toxicity test at an IWC of thirteen percent.

21.    Permit Condition IV.B.2.c. of the Permit issued November 28, 2007, and effective December 1, 2007, required the Permittee to perform short-term chronic toxicity tests on the wastewater from Outfall 001 during the month of August.

22.    Although the Defendant indicated that it collected toxicity test samples in August of 2013, the sample results did not meet the chronic toxicity test requirements and were invalid. The Defendant did not perform a retest for short-term chronic toxicity until October, 2013, as indicated in Defendant's Toxicity Test Report Summary submitted October 24, 2013.

23.    Permit Condition I.B.1. requires sample collection and measurement actions be representative of the volume and nature of the monitored discharge.

24.    The Department inspected the Facility on April 24, 2012, and found that the influent sampler location was not representative of waste contributed by one of its industrial dischargers, Kronospan.

25.    Permit Condition I.B.3.a. requires test procedures for the analysis of pollutants to conform to 40 C.F.R. Part 136.

26.     During the Department's inspections of the Facility on May 9, 2013, and again on August 12, 2014, the Department noted that influent samples were not kept at the proper temperature as required by Permit Condition I.B.3.a.

27.     During the Departmental Performance Audit Inspection of the Facility on December 16, 2014, the Department noted several deficiencies in sampling procedures. The pH buffers were not in original containers and were not marked with an expiration date. The Facility was using uncertified thermometers inside the composite sampler. The sampler tube on the influent sampler between the sampler and the sample container was contaminated by solids attached to the tubing wall. Facility personnel were not able to provide all the necessary standard operating procedures. Bench sheets were not initialed and were not clearly understandable. The Defendant was unable to provide the Chains of Custody for samples collected for onsite analysis. The E. coli media plates were expired. Paperwork and documentation was insufficient for the Department to determine $CBOD_5$, TSS, E. coli, $NH_3N$, and American Dye Manufacturers Institute (ADMI) color methodology. The Defendant did not have certified weights at the Facility. The thermometers were not checked and recorded along with the balance. The Department also observed drinks and food stored with the samples.

## III. The Defendant Discharged Without a Permit.

28.     Ala. Code § 22-22-9(i)(3) (2006 Rplc. Vol.) requires that every person shall obtain a permit prior to discharging any new or increased pollution into any water of the state.

29.     The sanitary sewer overflow (hereinafter "SSO") reports for the SSO events included in Attachment A indicate that wastewater in the form of SSOs was discharged without a permit.

30.     The Defendant's August 28, 2014, Stormwater Pollution Prevention Plan and Best Management Practices Plan submitted to the Department indicate that stormwater surface flow across the dewatering area flows toward a stormwater drain inlet which flows towards an unpermitted outfall that discharges to an unnamed tributary to Choccolocco Creek, a water of the state.

### IV. The Defendant Has Failed to Follow Reporting Requirements.

#### A. Failure to Submit Complete and Accurate Noncompliance Notification Forms

31.     Permit Condition I.C.2.b requires the Permittee to submit a noncompliance notification report to the Department should a discharge not comply with any limitation of the permit.   The Permittee is required to submit noncompliance notification reports to the Department with the next DMR after becoming aware of the noncompliance.

32.     The Department has not received the noncompliance notification for the July 2013 monitoring period Permit limitation violations, in violation of Permit Condition I.C.2.b.

33.     The Defendant submitted a noncompliance notification report and DMR to the Department for the September 2014 monitoring period indicating three Permit limitation violations, including violations of Permit limitations for the CBOD monthly and weekly average concentrations as well as the CBOD monthly average loading.   However, the Defendant only reported two exceedances ("No. Ex." Column) in its DMR for the September 2014 monitoring period.

#### B. Failure to Provide Timely and Appropriate Notification of SSOs

34.     Permit Condition I.C.2.d. requires the Permittee to provide notification to the Director, the public, the county health department, and any other affected entity such as public water systems, as soon as possible upon becoming aware of any notifiable SSO.   Permit

Condition III.H.30. defines a notifiable SSO as "an overflow, spill, release or diversion of wastewater from a sanitary sewer system that: a. Reaches a surface water of the State; or b. May imminently and substantially endanger human health based on potential for public exposure including but not limited to close proximity to public or private water supply wells or in areas where human contact would be likely to occur."

35.     The Defendant failed to immediately report to the Department three SSOs that occurred in 2011 that were reported in the 2011 Municipal Water Pollution Prevention Program (hereinafter "MWPP") Report, six SSOs that occurred in 2012 that were reported in the 2012 MWPP Report, and four SSOs that occurred in 2013 that were reported in the 2013 MWPP Report.

36.     The Department noted during its inspection of the Facility on April 24, 2012, that the Facility had overflows from two manholes in January of 2012 that the Defendant failed to properly report.

37.     Permit Condition I.C.2.f. requires the Permittee to report SSOs on Form 415 no later than five days after becoming aware of the SSO.  The Defendant failed to submit SSO reports for the three SSOs that occurred in 2011 that were reported in the 2011 MWPP Report, the six SSOs that occurred in 2012 that were reported in the 2012 MWPP Report, and the four SSOs that occurred in 2013 that were reported in the 2013 MWPP Report.

38.     The Defendant submitted a SSO report to the Department indicating that it did not notify the Department of the December 25, 2014 SSO until January 15, 2015. The SSO report also indicated that the public and county health department were not notified of this SSO.

39.     The Defendant submitted a SSO report to the Department for the November 10, 2015, SSO indicating that the Defendant did not notify the county health department.

40.    The Defendant submitted SSO reports to the Department for SSOs occurring on December 24, 2015 and December 26, 2015. These reports indicate that the Defendant did not notify the Department of the SSOs until January 19, 2016; that the Defendant did not notify the county health department until January 20, 2016; and that the Defendant did not notify the public until January 25, 2016.

41.    The Defendant submitted a SSO report to the Department for the September 1, 2016 SSO indicating that the public and county health department were not notified of the SSO.

### C. Failure to Report Unpermitted Discharges as Required by the Permit

42.    Permit Condition I.C.2.e. requires that the Permittee submit with its Annual MWPP Report certain information for each known unpermitted discharge that occurs, including the cause, date, duration, volume, description of the source, location, ultimate destination of the discharge, and corrective actions.

43.    The Defendant's 2011 MWPP Report indicates that four bypass or overflow events of untreated wastewater occurred in 2011 prior to the headworks of the WWTP due to heavy rain. However, the Report did not include the causes, dates, durations, volumes, descriptions of the sources, locations, or ultimate destinations of the bypass or overflow events.

44.    The Defendant's 2012 MWPP Report indicates that six bypass or overflow events of untreated wastewater occurred in 2012 prior to the headworks of the WWTP due to heavy rain.  However, the Report did not include the causes, dates, durations, volumes, descriptions of the sources, locations, or ultimate destinations of the bypass or overflow events.

## D. Failure to Submit Timely DMRs

45.     Permit Condition I.C.1.b requires the Permittee to submit certain reports on a monthly basis.  The monthly DMRs are to be submitted so that they are received by the Department no later than the 28th day of the month following the reporting period.

46.     The Defendant failed to submit the DMRs listed in Attachment A so that they were received by the Department by the due date, in violation of Permit Condition I.C.1.b.

47.     The September 2011 monitoring period DMR submitted to the Department by the Defendant on October 25, 2011, failed to include the pH daily maximum.  The DMR was not revised to include the pH daily maximum until May 17, 2012.

## E. Failure to Report Adverse Impacts Caused by Industrial Dischargers

48.     Permit Condition II.G.3 requires the Permittee to report to the Department any adverse impact caused or believe to be caused by an indirect discharger on the treatment process, quality of discharged water, or quality of sludge.  Such a report should be submitted to the Department within seven days of the Permittee becoming aware of the adverse impacts.

49.     During the Department's inspection of the Facility on April 24, 2012, Facility personnel indicated that Kronospan, an indirect discharger, was discharging high amounts of formaldehyde that was affecting waste treatment.

50.     During an inspection of the Facility on May 9, 2013, the Department noted that Kronospan's waste was causing adverse impacts on the treatment process such that the Facility had to divert Kronospan's waste into a separate basin to allow solids to settle before being slowly introduced into the WWTP.

51.     During the Department's inspection of the Facility on August 12, 2014, the Defendant stated that the Facility "was still having issues with wastewater coming from Kronospan."

52.     During the Department's inspection of the Facility on October 27, 2015, Facility personnel indicated still having issues "that they were still having issues with Kronospan's formaldehyde concentration and that their limits are too high."

53.     Despite these verbal indications to the Department during Departmental inspections that the Facility had experienced adverse impacts due to an indirect discharger, the Defendant did not submit reports to the Department as required by Permit Condition II.G.3.

**V. The Defendant Has Not Properly Operated and Maintained Facility.**

54.     Permit Condition II.A.1. requires the Permittee to properly operate and maintain all facilities and systems of treatment and control which are installed or used by the Permittee to achieve compliance with the conditions of the Permit.

55.     The Department inspected the Facility on May 9, 2013, and noted deficiencies indicative of improper maintenance and operation, including algae growing on the outer wall of the secondary clarifier and trash in the sludge drying beds.

56.     The Department inspected the Facility on July l5, 2013, and noted that one of the two clarifiers at the Facility was out of operation which resulted in the second clarifier being overloaded and causing water to go over the top of the clarifier teeth. Plastic bottles were also observed in one of the drying beds during this inspection.

**Count I**

57.     Plaintiffs repeat, replead and incorporate by reference paragraphs 1 through 56 above.

58.     The above violations are due to be abated by injunction.

**Count II**

59.     Plaintiffs repeat, replead and incorporate by reference paragraphs 1 through 58, above.

60.     Pursuant to Ala. Code § 22-22A-5(18), as amended, a civil penalty is due to be assessed for the referenced violations.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Take jurisdiction over this matter.

B.     Adjudge and declare that the Defendant violated the limitations, terms, and conditions of the Permit.

C.     Adjudge and declare that the Defendant caused or allowed discharges of pollutants from its wastewater treatment facility into a water of the State in violation of the limitations set forth in the Permit.

D.     Adjudge and declare that Defendant caused or allowed unpermitted discharges of pollutants from its wastewater treatment system.

E.     Order the Defendant to take action to ensure that similar violations of the AWPCA will not recur in the future.

F.     Assess a civil penalty against the Defendant and in favor of Plaintiffs pursuant to Ala. Code §§ 22-22A-5(18)b. and c., as amended, for each and every violation of the Permit alleged in this Complaint for which a penalty has not previously been assessed.

G.     Tax the costs of this action against the Defendant.

H.     Order such other relief that the Court deems proper.

Respectfully submitted,


s/ Robert D. Tambling
Robert D. Tambling (TAM001)
Assistant Attorney General

**ADDRESS OF COUNSEL**:
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
Telephone: (334) 242-7445
Email:  rtambling@ago.state.al.us


s/ Carrie Blanton
Carrie Blanton (TOM024)
Assistant Attorney General

**ADDRESS OF COUNSEL:**
Alabama Department of Environmental Management
Office of General Counsel
P.O. Box 301463
Montgomery, AL 36130-1463
Telephone: (334) 271-7855
Fax:  (334) 394-4357
Email:  carrie.blanton@adem.alabama.gov

ELECTRONICALLY FILED
9/30/2016 8:24 AM
61-CV-2016-900310.00
CIRCUIT COURT OF
TALLADEGA COUNTY, ALABAMA
BRIAN YORK, CLERK

# ATTACHMENT "A"

Oxford Waterworks & Sewer Board
Oxford Tull C. Allen WWTP
NPDES Permit No. AL0058408

## PERMIT LIMITATION VIOLATIONS

| Monitoring Period | Parameter | Limit | Reported | Unit | Limit Type |
|---|---|---|---|---|---|
| August 2011 | TSS | 30.0 | 47.8 | mg/L | Monthly Avg. |
| August 2011 | TSS | 45.0 | 74.0 | mg/L | Weekly Avg. |
| August 2011 | NH3-N | 40.8 | 142 | lbs/day | Monthly Avg. |
| August 2011 | NH3-N | 61.2 | 166 | lbs/day | Weekly Avg. |
| August 2011 | NH3-N | 1.0 | 8.2 | mg/L | Monthly Avg. |
| August 2011 | NH3-N | 1.5 | 9.6 | mg/L | Weekly Avg. |
| September 2011 | TSS | 30.0 | 40.7 | mg/L | Monthly Avg. |
| September 2011 | TSS | 45.0 | 55.3 | mg/L | Weekly Avg. |
| September 2011 | NH3-N | 40.8 | 154 | lbs/day | Monthly Avg. |
| September 2011 | NH3-N | 61.2 | 184 | lbs/day | Weekly Avg. |
| September 2011 | NH3-N | 1.0 | 8.5 | mg/L | Monthly Avg. |
| September 2011 | NH3-N | 1.5 | 10.2 | mg/L | Weekly Avg. |
| September 2011 | FC | 200 | 474 | col/100 mL | Monthly Avg. |
| September 2011 | FC | 2000 | 7056 | col/100 mL | Maximum Daily |
| October 2011 | TSS | 30.0 | 59.9 | mg/L | Monthly Avg. |
| October 2011 | TSS | 45.0 | 75.9 | mg/L | Weekly Avg. |
| October 2011 | NH3-N | 40.8 | 132 | lbs/day | Monthly Avg. |
| October 2011 | NH3-N | 61.2 | 148 | lbs/day | Weekly Avg. |
| October 2011 | NH3-N | 1.0 | 8.1 | mg/L | Monthly Avg. |
| October 2011 | NH3-N | 1.5 | 9.1 | mg/L | Weekly Avg. |
| November 2011 | TSS | 30.0 | 32.5 | mg/L | Monthly Avg. |
| November 2011 | TSS | 45.0 | 52.3 | mg/L | Weekly Avg. |
| November 2011 | NH3-N | 40.8 | 109 | lbs/day | Monthly Avg. |
| November 2011 | NH3-N | 61.2 | 125 | lbs/day | Weekly Avg. |
| November 2011 | NH3-N | 1.0 | 7.0 | mg/L | Monthly Avg. |
| November 2011 | NH3-N | 1.5 | 8.0 | mg/L | Weekly Avg. |
| December 2011 | TSS | 30.0 | 35.3 | mg/L | Monthly Avg. |
| December 2011 | FC | 1000 | 1169 | col/100 mL | Monthly Avg. |
| May 2012 | NH3-N | 40.8 | 132 | lbs/day | Monthly Avg. |
| May 2012 | NH3-N | 61.2 | 170 | lbs/day | Weekly Avg. |
| May 2012 | NH3-N | 1.0 | 6.5 | mg/L | Monthly Avg. |
| May 2012 | NH3-N | 1.5 | 8.4 | mg/L | Weekly Avg. |
| June 2012 | NH3-N | 40.8 | 94 | lbs/day | Monthly Avg. |
| June 2012 | NH3-N | 61.2 | 150 | lbs/day | Weekly Avg. |
| June 2012 | NH3-N | 1.0 | 5.1 | mg/L | Monthly Avg. |

Oxford Waterworks & Sewer Board                                                                    Page 2 of 6
Oxford Tull C. Allen WWTP
NPDES Permit No. AL0058408

| Monitoring Period | Parameter | Limit | Reported | Unit | Limit Type |
|---|---|---|---|---|---|
| June 2012 | NH3-N | 1.5 | 8.1 | mg/L | Weekly Avg. |
| July 2012 | TSS | 45.0 | 52.0 | mg/L | Weekly Avg. |
| July 2012 | NH3-N | 40.8 | 42 | lbs/day | Monthly Avg. |
| July 2012 | NH3-N | 61.2 | 92 | lbs/day | Weekly Avg. |
| July 2012 | NH3-N | 1.0 | 2.4 | mg/L | Monthly Avg. |
| July 2012 | NH3-N | 1.5 | 5.3 | mg/L | Weekly Avg. |
| July 2012 | CBOD | 326 | 351 | lbs/day | Monthly Avg. |
| July 2012 | CBOD | 490 | 646 | lbs/day | Weekly Avg. |
| July 2012 | CBOD | 8.0 | 20.1 | mg/L | Monthly Avg. |
| July 2012 | CBOD | 12.0 | 36.9 | mg/L | Weekly Avg. |
| July 2012 | CBOD % Removal | 85.0 | 80.0 | Percent | Monthly Avg. Min. |
| August 2012 | TSS | 45.0 | 55.5 | mg/L | Weekly Avg. |
| August 2012 | NH3-N | 40.8 | 86 | lbs/day | Monthly Avg. |
| August 2012 | NH3-N | 61.2 | 171 | lbs/day | Weekly Avg. |
| August 2012 | NH3-N | 1.0 | 3.8 | mg/L | Monthly Avg. |
| August 2012 | NH3-N | 1.5 | 7.6 | mg/L | Weekly Avg. |
| August 2012 | CBOD | 326 | 339 | lbs/day | Monthly Avg. |
| August 2012 | CBOD | 490 | 575 | lbs/day | Weekly Avg. |
| August 2012 | CBOD | 8.0 | 15.1 | mg/L | Monthly Avg. |
| August 2012 | CBOD | 12.0 | 25.6 | mg/L | Weekly Avg. |
| August 2012 | CBOD % Removal | 85.0 | 61.4 | Percent | Monthly Avg. Min. |
| August 2012 | TSS % Removal | 85.0 | 82.0 | Percent | Monthly Avg. Min. |
| September 2012 | NH3-N | 1.0 | 1.1 | mg/L | Monthly Avg. |
| September 2012 | NH3-N | 1.5 | 3.2 | mg/L | Weekly Avg. |
| September 2012 | CBOD | 326 | 361 | lbs/day | Monthly Avg. |
| September 2012 | CBOD | 8.0 | 19.2 | mg/L | Monthly Avg. |
| September 2012 | CBOD | 12.0 | 25.7 | mg/L | Weekly Avg. |
| September 2012 | CBOD % Removal | 85.0 | 81.7 | Percent | Monthly Avg. Min. |
| October 2012 | NH3-N | 1.0 | 1.1 | mg/L | Monthly Avg. |
| October 2012 | NH3-N | 1.5 | 2.9 | mg/L | Weekly Avg. |
| October 2012 | CBOD | 8.0 | 13.4 | mg/L | Monthly Avg. |
| October 2012 | CBOD | 12.0 | 18.6 | mg/L | Weekly Avg. |
| November 2012 | NH3-N | 61.2 | 108 | lbs/day | Weekly Avg. |
| November 2012 | NH3-N | 1.0 | 1.4 | mg/L | Monthly Avg. |
| November 2012 | NH3-N | 1.5 | 5.5 | mg/L | Weekly Avg. |
| November 2012 | CBOD | 490 | 513 | lbs/day | Weekly Avg. |
| November 2012 | CBOD | 8.0 | 13.4 | mg/L | Monthly Avg. |
| November 2012 | CBOD | 12.0 | 26.2 | mg/L | Weekly Avg. |
| November 2012 | CBOD % Removal | 85.0 | 82.8 | Percent | Monthly Avg. Min. |
| February 2013 | TSS | 1225 | 1242 | lbs/day | Monthly Avg. |
| May 2013 | NH3-N | 40.8 | 51 | lbs/day | Monthly Avg. |
| May 2013 | CBOD | 326 | 369 | lbs/day | Monthly Avg. |
| June 2013 | NH3-N | 40.8 | 412 | lbs/day | Monthly Avg. |

Oxford Waterworks & Sewer Board
Oxford Tull C. Allen WWTP
NPDES Permit No. AL0058408

Page 3 of 6

| Monitoring Period | Parameter | Limit | Reported | Unit | Limit Type |
|---|---|---|---|---|---|
| June 2013 | NH3-N | 61.2 | 417 | lbs/day | Weekly Avg. |
| June 2013 | NH3-N | 1.0 | 10.7 | mg/L | Monthly Avg. |
| June 2013 | NH3-N | 1.5 | 10.86 | mg/L | Weekly Avg. |
| June 2013 | CBOD | 326 | 367 | lbs/day | Monthly Avg. |
| June 2013 | CBOD | 8.0 | 9.6 | mg/L | Monthly Avg. |
| July 2013 | NH3-N | 40.8 | 153 | lbs/day | Monthly Avg. |
| July 2013 | NH3-N | 61.2 | 147 | lbs/day | Weekly Avg. |
| July 2013 | NH3-N | 1.0 | 3.6 | mg/L | Monthly Avg. |
| July 2013 | NH3-N | 1.5 | 3.46 | mg/L | Weekly Avg. |
| July 2013 | CBOD | 8.0 | 10.3 | mg/L | Monthly Avg. |
| August 2013 | NH3-N | 40.8 | 121 | lbs/day | Monthly Avg. |
| August 2013 | NH3-N | 61.2 | 120 | lbs/day | Weekly Avg. |
| August 2013 | NH3-N | 1.0 | 3.2 | mg/L | Monthly Avg. |
| August 2013 | NH3-N | 1.5 | 3.17 | mg/L | Weekly Avg. |
| August 2013 | CBOD | 326 | 465 | lbs/day | Monthly Avg. |
| August 2013 | CBOD | 490 | 492 | lbs/day | Weekly Avg. |
| August 2013 | CBOD | 8.0 | 12.0 | mg/L | Monthly Avg. |
| August 2013 | CBOD | 12.0 | 13.0 | mg/L | Weekly Avg. |
| September 2013 | CBOD | 300 | 585 | lbs/day | Monthly Avg. |
| September 2013 | CBOD | 450 | 585 | lbs/day | Weekly Avg. |
| September 2013 | CBOD | 8.0 | 21 | mg/L | Monthly Avg. |
| September 2013 | CBOD | 12.0 | 21 | mg/L | Weekly Avg. |
| October 2013 | CBOD | 300 | 316.3 | lbs/day | Monthly Avg. |
| October 2013 | CBOD | 8.0 | 14.1 | mg/L | Monthly Avg. |
| October 2013 | CBOD | 12.0 | 13.9 | mg/L | Weekly Avg. |
| November 2013 | CBOD | 8.0 | 14 | mg/L | Monthly Avg. |
| November 2013 | CBOD | 12.0 | 14 | mg/L | Weekly Avg. |
| May 2014 | CBOD | 300 | 568 | lbs/day | Monthly Avg. |
| May 2014 | CBOD | 450 | 531 | lbs/day | Weekly Avg. |
| May 2014 | CBOD | 8.0 | 16 | mg/L | Monthly Avg. |
| May 2014 | CBOD | 12.0 | 15 | mg/L | Weekly Avg. |
| June 2014 | CBOD | 300 | 508 | lbs/day | Monthly Avg. |
| June 2014 | CBOD | 450 | 501 | lbs/day | Weekly Avg. |
| June 2014 | CBOD | 8.0 | 14 | mg/L | Monthly Avg. |
| June 2014 | CBOD | 12.0 | 14 | mg/L | Weekly Avg. |
| July 2014 | CBOD | 8.0 | 11 | mg/L | Monthly Avg. |
| August 2014 | CBOD | 300 | 326 | lbs/day | Monthly Avg. |
| August 2014 | CBOD | 8.0 | 16 | mg/L | Monthly Avg. |
| August 2014 | CBOD | 12.0 | 16 | mg/L | Weekly Avg. |
| September 2014 | CBOD | 300 | 331 | lbs/day | Monthly Avg. |
| September 2014 | CBOD | 8.0 | 17 | mg/L | Monthly Avg. |
| September 2014 | CBOD | 12.0 | 20 | mg/L | Weekly Avg. |
| October 2014 | CBOD | 8 | 10 | mg/L | Monthly Avg. |

Oxford Waterworks & Sewer Board
Oxford Tull C. Allen WWTP
NPDES Permit No. AL0058408

| Monitoring Period | Parameter | Limit | Reported | Unit | Limit Type |
|---|---|---|---|---|---|
| October 2014 | CBOD | 12 | 20 | mg/L | Weekly Avg. |
| June 2015 | NH3-N | 37.5 | 116 | lbs/day | Monthly Avg. |
| June 2015 | NH3-N | 56.2 | 136 | lbs/day | Weekly Avg. |
| June 2015 | NH3-N | 1 | 4.23 | mg/L | Monthly Avg. |
| June 2015 | NH3-N | 1.5 | 5.15 | mg/L | Weekly Avg. |

**FAILURE TO MONITOR THREE TIMES PER WEEK**

| Monitoring Period | Parameter |
|---|---|
| March 2013 | E. coli |
| April 2013 | NH3-N<br>Color |
| May 2013 | Color<br>CBOD (effluent) |
| June 2013 | CBOD (effluent) |
| July 2013 | E. coli<br>Color<br>CBOD (effluent)<br>TSS (effluent) |
| August 2013 | Color<br>CBOD (effluent) |
| September 2013 | Color |
| December 2013 | Color |
| January 2014 | Color<br>CBOD (effluent) |
| February 2014 | E. coli<br>Color |
| March 2014 | Color<br>CBOD (effluent) |
| April 2014 | E. coli<br>Color<br>CBOD (effluent) |
| May 2014 | E. coli<br>Color<br>pH |
| July 2014 | E. coli<br>Color |
| September 2014 | E. coli |
| October 2014 | E. coli<br>Color |
| November 2014 | color |
| December 2014 | E. coli<br>Color |

Oxford Waterworks & Sewer Board                                                     Page 5 of 6
Oxford Tull C. Allen WWTP
NPDES Permit No. AL0058408

| Monitoring Period | Parameter |
|---|---|
| January 2015 | E. coli<br>Color |
| February 2015 | E. coli<br>Color |
| April 2015 | Color<br>CBOD (effluent) |
| May 2015 | E. coli<br>CBOD (effluent) |
| June 2015 | E. coli |
| July 2015 | CBOD (effluent) |
| August 2015 | E. coli<br>CBOD (effluent) |
| September 2015 | E. coli<br>CBOD (effluent) |
| October 2015 | E. coli<br>Color<br>CBOD (effluent) |
| November 2015 | E. coli<br>Color<br>CBOD (effluent) |
| December 2015 | E. coli<br>Color<br>CBOD (effluent) |
| January 2016 | E. coli<br>Color<br>CBOD (effluent) |
| February 2016 | E. coli<br>Color |
| March 2016 | E. coli<br>Color<br>CBOD (effluent) |
| April 2016 | CBOD (effluent) |
| June 2016 | CBOD (influent and effluent) |
| July 2016 | CBOD (influent and effluent) |

## SANITARY SEWER OVERFLOWS

| Date | Volume (gallons) | Location | Cause |
|---|---|---|---|
| January 2012 | | 801 Boozer Drive | (Two manhole overflows) |
| December 25, 2014 | 250 | 59 Bailey Street | Clog in sewer line |
| November 10, 2015 | >10,000 | 801 Boozer Drive | Excessive rain |
| December 24, 2015 | >10,000 | Hickory Drive and Airport Road | Excessive rain |
| December 26, 2015 | >100,000 | Friendship Lift Station | Excessive rain |

DOCUMENT 3
ATTACHMENT A

Oxford Waterworks & Sewer Board                                                                Page 6 of 6
Oxford Tull C. Allen WWTP
NPDES Permit No. AL0058408

| September 1, 2016 | >1,000 | Recreation Drive | Fitting in force main blew out |

**LATE SUBMITTAL OF DMRS**

| Monitoring Period | Outfall | Due Date | Received Date | Days Late |
|---|---|---|---|---|
| March 2013 | 0011 | April 28, 2013 | April 29, 2013 | 1 |
| March 2013 | 001Q | April 28, 2013 | April 29, 2013 | 1 |
| May 2013 | 0011 | June 28, 2013 | July 24, 2013 | 26 |
| December 2013 | 0011 | January 28, 2014 | January 30, 2014 | 2 |